# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Schmaltz, Appellant, v. York Manufacturing Company.

*Equity—Jurisdiction—Property beyond state limits.*

So long as an individual is a citizen of a state, he is subject to the process and decrees of its courts of equity, regardless of the locus of the subject-matter indirectly affected by the litigation.

Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, a suit may be maintained and a remedy granted which directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted. While the situs of property in dispute is in another state a decree of a court of this state cannot operate upon or directly affect it, yet a court of equity in this state, having jurisdiction of all the parties can determine their rights to the property and by proper process enforce them in personam.

On a bill in equity in Pennsylvania against a citizen of Pennsylvania where it appears that the defendant furnished to a brewery in New York a refrigerating plant under an agreement by which the title was to remain in defendant until the plant was paid for, and the plant becomes attached to the brewery as a fixture, but the agreement with the restriction as to title is not recorded in New York as required by the laws of that state, and thereafter the brewery is mortgaged, and the mortgage is assigned to a citizen of Pennsylvania, and the defendant notifies the brewing company of its intention to remove the refrigerating plant by its own employees, the court in Pennsylvania has jurisdiction at the instance of the holder of the mortgage to enjoin and will enjoin the defendant from taking away the refrigerating plant. In such a case the decree operates upon and is enforced against the person and not the property.

*Equity—Injunction—Removal of part of plant.*

An injunction will issue at the suit of a lien creditor to prevent the removal of a constituent and necessary part of a manufacturing plant which will prevent its operation and result in a loss of business.

*Foreign laws—Construction.*

The construction of a statute of a state by its highest judicial tribunal will ordinarily be received as conclusive in the courts of other states.

Argued May 21, 1902.  Appeal, No. 150, Jan. T., 1902, by plaintiff, from decree of C. P. York Co., April T., 1902, No. 3, dismissing bill in equity in case of Herman Schmaltz v. York Manufacturing Company and the Deer Park Brew Company. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for an injunction.  Before BITTENGER, P. J. The court found the facts to be as follows :

1. The York Manufacturing Company is a corporation, incorporated under the laws of the state, doing business in the city of York.  The corporation is and was in the year 1900, engaged in the manufacture of ice machines, refrigerating apparatus and other machinery.  The Deer Park Brew Company is a corporation, incorporated under the laws of the state of New York, engaged in the brewing of beer, at Port Jervis, New York, and was so engaged at the filing of the bill in this case, as a reorganization of the corporation of the Deer Park Brewing Company, a bankrupt corporation closed out under the United States bankrupt laws.  No service of the bill was made on the Deer Park Brew Company, but the said defendant has filed an answer.

2. The York Manufacturing Company, through its agent, G. E. Berna, sold an ice machine and refrigerating apparatus to Kurt Rudolph Sternberg, then a resident of Baltimore, in the month of April, 1900, to be shipped to Port Jervis, New York, there to be erected in a brewery of the Deer Park Brewing Company, owned and operated by said Sternberg and some associates who were in business with said Sternberg, but without any knowledge by the York Manufacturing Company that the machine was being purchased for the Deer Park Brewing Company.  Specifications and the agreement were afterwards signed by said agent for the York Manufacturing Company and

by Sternberg, in Baltimore, viz: on April 5, 1900. Afterwards said agreement was approved on April 10, 1900, by the York Manufacturing Company, at York, Pennsylvania, and a duplicate sent to said Sternberg, in Baltimore, Maryland.

3. The said agreement, referring to the preceding specifications and general agreement, with the York Manufacturing Company's approval, is as follows:

### " AGREEMENT

" Between the York Manufacturing Company, a corporation organized under the laws of the State of Pennsylvania, of York, York County, Pennsylvania, U. S. A., party of the first part, and Kurt Rudolph Sternberg, Esq., of Baltimore, County of Baltimore, State of Maryland, party of the second part, as follows:

" The York Manufacturing Company agrees to furnish the said party of the second part for use in brewery, situated in the City of Port Jervis, County of          and State of New York, at No.          Street, one York refrigerating machine of the standard ' York ' style and patented system, together with the apparatus mentioned and described in the attached specifications; said machine and apparatus to be in all respects in accordance with said specifications which, together with all the agreements and guarantees contained therein, are made a part of this agreement, and will deliver and have same ready for operation about the          day of          , 189   , for the sum of fifteen thousand ($15,000.00) dollars.

" The said party of the second part agrees to pay for the said machine and apparatus as follows, to wit:

" $3,000.00 cash with order.

" Balance in four equal six per cent interest bearing bankable notes to be dated and delivered when plant is ready to operate.

" First note to become due in four months.

" Second note to become due in seven months.

" Third note to become due in ten months.

" Fourth note to become due in thirteen months.

" The title to said machine and apparatus shall not pass from, but shall remain in the York Manufacturing Company until full settlement is made for the same, until the same is fully paid for,

and in the meantime the party of the second part agrees to fully indemnify the York Manufacturing Company against any and all loss or damage to said machine and apparatus by fire or other cause whatsoever, and also agree to keep the same fully insured for the benefit of the York Manufacturing Company, as its interest may appear, until fully paid for.

"In case of failure or refusal to make any of the payments when due, or to make settlement as agreed, or to pay any note that may be given when it falls due, the whole of the unpaid indebtedness arising under this agreement shall thereby, at the option of the York Manufacturing Company, become immediately due and demandable.

"Witness the following signatures and seals, the fifth day of April, 1900.

"YORK MANUFACTURING COMPANY,

"By G. E. BERNA.

"Approved by the York Manufacturing Company, at York, Pa., tenth day of April, 1900.

"YORK MANUFACTURING COMPANY,

"By P. H. GLATFELTER, Prest.

(Seal.)                    "W. L. GLATFELTER, Secy."

4. The York Manufacturing Company, in pursuance of the contract, during some three months after the execution of said agreement, manufactured the different parts of the refrigerator and ice machine so contracted for, and purchased pipes for the completion of the same, and when finished shipped the machine to Port Jervis, New York, and by its workmen set up and installed in the brewery of the Deer Park Brewing Company the said machinery, placing it upon proper foundations, affixing its parts to the building and placing the boilers, walled in, in an adjoining building, and put said brewery in operation.

5. The cash payment of $3,000 was paid to the York Manufacturing Company as provided in the agreement by said Sternberg, and after the completion of the erection of said refrigerating plant and apparatus there were executed and delivered on the dates thereof respectively to the York Manufacturing Company by Kurt Rudolph Sternberg promissory notes of said Kurt Rudolph Sternberg to the order of the York Manufactur-

ing Company bearing the following dates and drawn in the following amounts respectively, to wit:

Note for $2,843.69 dated August 27, 1900, payable four months after date at the First National Bank of Port Jervis, New York, which note was paid by the maker at maturity.

Note for $2,343.69 dated August 27, 1900, payable seven months after date at the First National Bank of Port Jervis, New York, which was unpaid at maturity and duly protested, and which note with principal, interest and protest charges still remains unpaid.

Note for $2,068.69 dated August 27, 1900, payable ten months after date at the National Bank of Port Jervis, New York, which was unpaid at maturity and which note with principal and interest still remains unpaid.

Note for $2,068.69 dated August 27, 1900, payable thirteen months after date at the National Bank of Port Jervis, New York, and was unpaid at maturity and which note with principal and interest still remains unpaid.

Note for $1,896.93 dated February 27, 1901, payable six months after date at the National Bank of Port Jervis, New York, which note was unpaid at maturity and with principal and interest still remains unpaid.

Upon the above mentioned notes there remains due to the York Manufacturing Company the sum of $6,481.07, and $1.85 protest fees, with interest thereon from August 27, 1900, and the additional sum of $1,896.93 with interest from February 27, 1901; the balance of the purchase price of $15,000 having been paid by said Kurt Rudolph Sternberg, the purchaser.

6. At the time of the execution of the said agreement, and at the time of the delivery of said machinery, so set up in said brewery, by the York Manufacturing Company, the said Kurt Rudolph Sternberg was the president and manager of the said Deer Park Brewing Company.

7. After the said refrigerating plant and apparatus was installed and put in operation at the brewery of the Deer Park Brewing Company at Port Jervis, New York, to wit: October 25, 1900, the said Deer Park Brewing Company made and delivered its mortgage to the National Bank of Port Jervis, of Port Jervis, New York, for the purpose of securing a certain bond of even date with the said mortgage made by the said

Deer Park Brewing Company, and deliverd it to the said National Bank of Port Jervis, and by said mortgage transferred to the said National Bank of Port Jervis all the property therein described, including the refrigerating plant and apparatus purchased as aforesaid from the York Manufacturing Company and installed in the brewery of the said Deer Park Brewing Company, which said mortgage was afterwards duly recorded in the proper offices for said purposes in the proper county where the property was situated, when mortgaged, both as a real and chattel mortgage. Said mortgage was executed to said national bank as collateral security for moneys to be advanced to said Deer Park Brewing Company on notes to be discounted.

8. After the execution and delivery of the bond and mortgage, hereinbefore described, by the Deer Park Brewing Company to the National Bank of Port Jervis, the said Deer Park Brewing Company became indebted to the said National Bank of Port Jervis, by reason of notes made or indorsed by the said Deer Park Brewing Company and discounted by the said National Bank of Port Jervis, in a sum in excess of the amount named in the said bond and mortgage and intended to be secured thereby.

9. At the time the said Deer Park Brewing Company was adjudicated a bankrupt as aforesaid, to wit: May 25, 1901, the said Deer Park Brewing Company was indebted to the said National Bank of Port Jervis in a sum exceeding the amount named in said bond and mortgage, which said indebtedness was secured and intended to be secured by the said bond and mortgage, and the said Deer Park Brewing Company had failed to meet and pay the indebtedness so created, secured as aforesaid by said bond and mortgage, and on May 25, 1901, had been in default for a period of more than sixty days and is still in default.

10. On or about January 10, 1902, the said bond and mortgage described in paragraph 7 were duly assigned, transferred and set over by the said National Bank of Port Jervis to Herman Schmaltz, the plaintiff, of the city of Philadelphia, and are now owned by him, and at the time of said last mentioned transfer the debt secured and intended to be secured by the said bond and mortgage remaining due and unpaid aggregated

$26,124.06, and there was, at the time of the filing of the bill, due and owing to the said Herman Schmaltz, assignee of the said bond and mortgage aforesaid, the sum of $26,124.06, as appears from said bond and mortgage and evidence filed.

11. That on January 20, 1902, the law firm of Hastings & Gleason (the said H. A. Gleason, of said firm of attorneys at law, of New York city, being the counsel of the York Manufacturing Company in New York, with general authority to act there, for the said company) gave the following notice to Herman Schmaltz, the plaintiff:

" New York, January 20, 1902.

" Re Deer Park Brewing Co.

  " Mr. Schmaltz,

    " 207 Buttonwood St.,

      " Philadelphia, Pa.

"Dear Sir: We understand you are interested in this matter. We represent the York Manufacturing Company, which owns the ice plant, and beg to notify you that unless this transaction is closed at once we shall be compelled to remove the plant immediately.

" Very truly yours,

" Hastings & Gleason."

On February 15, 1902, the same attorneys served the following notice on the owners of Deer Park Brew Company:

" New York, February 13, 1902.

" Owners Deer Park Brewing Co.,

    " Port Jervis, New York.

" Gentlemen: You are hereby notified that during the week commencing February 17th, the ice plant belonging to the York Manufacturing Company will be removed by their employees.

" We would ask you to have work stopped to facilitate such removal, as their workmen will be there during the week named.

" Very truly yours,

" Hastings & Gleason."

12. Said refrigerator was a constituent part of the said brewery plant, of the Deer Park Brewing Company (afterwards Deer Park Brew Company), attached to, and necessary for, the

operation of the same. It was capable, however, of being removed without serious permanent injury to the walls and other parts of the brewery, and by the substitution of another refrigerator of the same or other manufacture, operations could be continued, as conducted before removal of the refrigerator in question.

13. Neither the agreement nor a copy thereof, providing that the refrigerator should remain the property of the York Manufacturing Company until settled and paid for, was filed in the office of the town clerk at Port Jervis, New York, as required by the New York statute of 1897, at the time of the execution of the mortgage by said Deer Park Brewing Company to the said Port Jervis National Bank, or previously. The said bank had no notice, actual or constructive, of the said agreement. The bank, in good faith, without notice, took said mortgage, and advanced the moneys heretofore mentioned on discounted notes, on the credit of said mortgage, as collateral security; and the mortgage was assigned to the plaintiff by the bank in good faith, for a valuable compensation.

14. In the proceedings in bankruptcy of the Deer Park Brewing Company, Kurt Rudolph Sternberg reported in the statement filed in said bankruptcy proceedings the said refrigerator as held by the York Manufacturing Company, on an agreement of conditional sale.

The court refused the injunction chiefly on the ground that under the testimony of defendant's manager, the defendant had no intention of removing the plant by any means other than legal process in the state of New York.

*Error assigned* was decree dismissing the bill.

*Joseph De F. Junkin* with him *J. S. Black*, for appellant.—
By the contract it is attempted to reserve title to the machine in the York Manufacturing Company " until full settlement is made for the same, until the same is fully paid for." .The contract constitutes a conditional sale, and if it is a Pennsylvania contract, the title attempted to be reserved cannot be insisted upon as against creditors or bona fide purchasers: Farquhar v. McAlevy, 142 Pa. 233; Ott v. Sweatman, 166 Pa. 217.

The contract is a Pennsylvania contract, as the court below

holds, because it was made in Pennsylvania: Beach on Modern Law of Contracts, sec. 66; Bennett v. Caldwell, 70 Pa. 253; Van Anken v. Dunning, 81 Pa. 464; Bollinger v. Gallaher, 144 Pa. 205; Scudder v. Union National Bank, 91 U. S. 406.

A contract involving a forfeiture upon the happening of a certain contingency will be strictly construed in favor of him against whom the forfeiture is stipulated. If any reasonable construction can be placed upon the contract that will avoid the forfeiture, it will be adopted: Westmoreland, etc., Natural Gas Co. v. DeWitt, 130 Pa. 235.

Whatever the law of New York may be upon the subject of conditional sales of chattels, there is no evidence that the law of New York differs from the law of Pennsylvania respecting the rights of a mortgagee of real estate as against one attempting to enforce a secret trust or equity: Bigley v. Jones, 114 Pa. 510.

If a stranger enter on the land of another, and make improvements by erecting buildings, they become the property of the owner of the land: Crest v. Jack, 3 Watts, 238; Beach on Modern Law of Contracts, sec. 156.

Where the mortgagor is insolvent, a court of equity will restrain the severance of machinery affixed to real estate in a building, upon the petition of the mortgagee: Witmer's Appeal, 45 Pa. 455; Morris's Appeal, 88 Pa. 368.

Where damages are incapable of measurement at law, or are estimable only by conjecture, and not by any accurate standard, although there is no irreparable injury, an injunction will be granted: Westmoreland, etc., Natural Gas Co. v. DeWitt, 130 Pa. 235; Com. v. Pittsburg, etc., R. R. Co., 24 Pa. 159; Sterling's Appeal, 111 Pa. 35.

The threats made by the appellee to remove the machine immediately by its employees, not only having been proved by the appellant, but admitted and repeated by the appellee in its answer, it is difficult to understand how the future intentions of the appellee, as divulged by the appellee's general manager, can affect the right of the appellant to an injunction.

*H. C. Niles*, with him *George S. Schmidt*, for appellee.—They must show the court that the acts against which they ask protection are not only threatened, but will be committed to their

injury: Gaw v. Phila. & Bristol Pass. Ry. Co., 6 Pa. Dist. Rep. 740 ; Heiser v. Leid, 11 Lancaster Law Rev. 265.

An injunction will not be granted unless the plaintiff shows a clear legal or equitable right which is being or about to be disturbed: 1 Beach on Injunction, sec. 20 ; Rhea v. Forsyth, 37 Pa. 503 ; Washburn's App., 105 Pa. 480 ; Philadelphia's App., 78 Pa. 33.

Where contracts are made in one place to be performed in another, they are governed by the law of the place of performance as to validity, nature, obligation and interpretation: Story on Conflict of (Laws 8th ed.), 376 ; People's Building Loan & Saving Assn. v. Berlin, 201 Pa. 1 ; Baum v. Birchall, 150 Pa. 164 ; Case v. Cushman, 3 W. & S. 544.

OPINION BY MR. JUSTICE MESTREZAT, October 13, 1902:

The trial judge has found and stated the facts very fully in his opinion and a summarized restatement of them here will be sufficient.

By an agreement in writing, dated April 5, 1900, the York Manufacturing Company, one of the defendants, the appellee and a corporation of this state, agreed with Kurt Rudolph Sternberg, a resident of Maryland and president and manager of the Deer Park Brewing Company, a New York corporation, to furnish him for use in a brewery situate in the state of New York " one York refrigerating machine of the standard ' York ' style and patented system, together with the apparatus mentioned and described in the attached specifications." The consideration was $15,000 of which $3,000 were to paid in cash with the order, and the balance " in four equal six per cent interest bearing bankable notes." The agreement contains the following : " The title to said machine and apparatus shall not pass from, but shall remain in the York Manufacturing Company until full settlement is made for the same, until the same is fully paid for, and in the meantime the party of the second part agrees to fully indemnify the York Manufacturing Company against any and all loss or damage to said machine and apparatus by fire or other cause whatsoever, and also agree to keep the same fully insured for the benefit of the York Manufacturing Company, as its interests may appear, until fully paid for. In the case of failure, or refusal to make any of the payments when due, or to

make settlement as agreed, or to pay any note that may be given when it falls due, the whole of the unpaid indebtedness arising under this agreement shall thereby, at the option of the York Manufacturing Company, become immediately due and demandable." The agreement was signed by Sternberg and the agent of the York Manufacturing Company in Maryland and was subsequently approved by the company at York, Pennsylvania and a duplicate sent to Sternberg in Maryland. During the three months succeeding the agreement, the York Manufacturing Company manufactured the different parts of the refrigerator, purchased pipes for the completion of the machine, and when finished shipped it to Port Jervis, New York, and installed it in the brewery of the Deer Park Brewing Company, "placing it upon proper foundations, affixing its parts to the building and placing the boilers, walled in, in an adjoining building, and put said brewery in operation."

The cash payment was made and the notes were given by Sternburg as provided in the agreement.

After the refrigerating machine had been installed and the brewery put in operation, the brewing company on October 25, 1900, mortgaged the plant, including the refrigerator, to the National Bank of Port Jervis to secure a bond of even date with the mortgage, which with the bond was given as collateral security for moneys to be advanced to the brewing company on notes to be thereafter discounted. The mortgage was duly recorded as a real estate and chattel mortgage in the county where the property was situated.

After the delivery of the collateral security, the National Bank of Port Jervis discounted the brewing company's notes to an amount exceeding the sum named in the bond and mortgage, and said amount is unpaid and is due to Herman Schmaltz, the plaintiff, a citizen of this state, by virtue of an assignment of the bond and mortgage dated January 10, 1902. The Deer Park Brewing Company became bankrupt, was closed out under the United States bankrupt law and, as a reorganization, the Deer Park Brew Company, a New York corporation, and one of the defendants, owns its plant and is engaged in the brewing business at Port Jervis, New York. The brew company was not served with the bill in this case but filed an answer and submitted itself to the jurisdiction of the court.

On January 20, 1902, the York Manufacturing Company, by its agent, gave to the plaintiff the following notice : " We represent the York Manufacturing Company, which owns the ice plant, and beg to notify you that unless this transaction is closed at once we shall be compelled to remove the plant immediately." On February 15, 1902, it also gave to the owners of the Deer Park Brew Company this notice: " You are hereby notified that during the week commencing February 17, the ice plant belonging to the York Manufacturing Company will be removed by their employees. We would ask you to have work stopped to facilitate such removal, as their workmen will be there during the week named."

The trial judge found that the " said refrigerator was a constituent part of said brewery plant of the Deer Park Brewing Company (afterwards Deer Park Brew Company), attached to, and necessary for, the operation of the same."

The statutes of the state of New York provide that all conditions and reservations in a contract for the sale of personal property, accompanied by immediate delivery and continued possession, shall be void as against subsequent mortgages, in good faith, and as to them the sale shall be deemed absolute, unless such contract or a copy thereof shall be filed in the office of the proper clerk of the town or city where the vendee resides, or if he is a nonresident of the state, of the town or city where the property is situate at the execution of the agreement. Neither the contract involved in this litigation nor a copy thereof was filed at Port Jervis, New York, as required by the statutes of that state. The bank, in good faith, without notice of the contract, took the mortgage and advanced the money, and assigned the mortgage in good faith, for a valuable consideration to the plaintiff.

After the service of the notice above referred to the plaintiff filed this bill. It prays that the York Manufacturing Company be enjoined from removing the refrigerating plant and apparatus from the brewery, and that the Deer Park Brew Company be enjoined from permitting it to be removed. In its answer the York Manufacturing Company avers that the notes given in part payment of the refrigerating plant had not been paid and that, therefore, by reason of the provisions of the contract, the title to the machine did not pass to the purchaser,

and the manufacturing company was entitled to the possession of it. The brew company filed an answer submitting itself to the jurisdiction of the court, and denying the right of its co-defendant to the property in dispute.

The learned trial judge refused an injunction on the ground, as we understand from his opinion, that under the defendant's testimony the York Manufacturing Company had no intention of removing the refrigerating plant from the brewery by any means other than the legal process of the state of New York and because " the manager of the defendant company testified that the company never intended forcibly, without resort to the court, to remove said plant from the said brewery."

The plaintiff and one of the defendants, the York Manufacturing Company, are residents of this state, and the Deer Park Brew Company, the other defendant, although not served with the bill, voluntarily submitted itself to the jurisdiction of the court. The important and a controlling question in the case is one of jurisdiction, which received but little consideration at the hands of the trial court and the counsel. It is not free from doubt, but reason and the weight of authority sustain the jurisdiction. The plaintiff is the assignee of a mortgagee and the principal defendant who resists the relief prayed for is a claimant to a part of the mortgaged premises, found by the court below to be a fixture. The other defendant is the owner in possession of the premises, whose interests in the controversy are not antagonistic to the plaintiff. While the situs of the property in dispute is in another state and a decree of a court of this state cannot operate upon or directly affect it, yet we think that a court of equity in this state, having jurisdiction of all the parties, can determine their rights to the property, and by proper process enforce them in personam: Penn v. Baltimore, 1 Vesey, Sr. 444; Carroll v. Lee, 3 G. & J. (Md.) 504; Mitchell v. Bunch, 22 Am. Dec. (N. Y.) 669; Hayden v. Yale, 40 Am. St. Rep. (La.) 232; Massie v. Watts, 6 Cranch (U. S.), 148; Pennoyer v. Neff, 95 U. S. 714; Phelps v. Mc-Donald, 99 U. S. 298. In the last cited case it is said: "Where the necessary parties are before a court of equity it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all

things necessary, according to the lex loci rei sitæ which he could do voluntarily, to give effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree in personam according to those equities, and enforce obedience to their decrees by process in personam." In Allen v. Buchanan, 38 Am. St. Rep. (Ala.) 187, it is held that a "suit in equity may be maintained, and remedies granted which affect and operate upon the person of the defendant, and not upon the subject-matter when it is situated in another state or country, but the parties are within the jurisdiction of the court, although such subject-matter is referred to in the decree, and the defendant is ordered to do, or to refrain from doing, certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted." In Carroll v. Lee, supra, EARLE, J., speaking for the court, says : " Where property in controversy is within the limits of the state, and the claimant resides abroad, the chancery court has an undeniable jurisdiction over the case. So where the party defendant is within the state, and the land or other property in contest is beyond its limits, although the proceeding is in rem, we apprehend there is no want of jurisdiction in the chancellor. To enforce a decree in a case of this kind the proceedings may be in personam, as well as by injunction, to recover the possesssion of the thing disputed."

In Jennings Bros. & Co. v. Beale, 158 Pa. 283, it is held that where a court of equity has jurisdiction of a person, it may issue an injunction against him to prevent trespass upon lands in another county. In Clark v. Clark, 180 Pa. 186, a party held the title to real and personal estate as trustee and was required to account in a court having jurisdiction over him but not over the property. Our Brother MITCHELL, speaking for the court, said : " By it (the writing) the appellant clearly constituted himself a trustee, and became liable to account in any court having jurisdiction over him, not by virtue of any statute as to tenants in common, but by the general jurisdiction of chancery to compel performance of equitable duties or the enforcement of equitable rights wherever the same may be found without reference to the locality of the land." In Clad v. Paist, 181 Pa. 148, it was held that a court of equity in

Philadelphia county at the instance of a resident of Chester county might restrain the obstruction of a right of way in Chester county by a resident of Montgomery county. The present chief justice delivering the opinion and citing many authorities, English and American, in support of the rule, said: " The parties being within the jurisdiction of the court, the court will under ordinary circumstances grant relief even in reference to a subject-matter beyond the territorial cognizance of the court." It was held in Vaughn v. Barclay, 6 Wh. 392, that this court had jurisdiction of a bill brought to compel the conveyance, by a trustee residing within the state, of the outstanding legal estate in lands situate in other states. And in Kendall v. McClure Coke Company, 182 Pa. 1, it was held that a court of equity in this state will enjoin a creditor of an insolvent estate who proves his claim and files exceptions to the assignee's account from prosecuting a suit instituted in another state to secure a preference over other creditors as to the lands there situated, although the question of the validity of the assignment in such other state involves the law of the situs of the property.

In Sutphen v. Fowler, 9 Paige (N. Y.), 280, the bill was filed for specific performance of the contract for sale of land in another state. It was held that the court had jurisdiction not only to decree specific performance of the contract and to authorize the plaintiff to take and hold possession of the land until the transfer to him of the legal title ; but also, in the meantime, the court could grant a perpetual injunction restraining the defendant from disturbing the plaintiff in such possession, or from doing any act whereby the title should be transferred to any person, or in any way impaired or incumbered.

The case of Great Falls Manufacturing Company v. Worster, 23 N. H. 462, is directly in point and sustains the jurisdiction of the court below. The plaintiff company in that case was a New Hampshire corporation and had its cotton mills on the Salmon river, which at this point was the dividing line between that state and Maine. It used the waters of the river to operate its mills and for this purpose it maintained a dam across the river, a part of which was in each state. The defendant, also a citizen of New Hampshire, claimed an interest in some

land in Maine which was flowed by the water of the pond created by the dam. The plaintiff company denied the defendant's claim to the land. He destroyed a part of the dam and threatened to remove the whole of it above a certain height so that it would not cause the water to flow his land. The bill prayed for an injunction and, as stated in the report of the case, " the only question now raised, being whether the court had jurisdiction to restrain a citizen of this state, from going into another state, and committing acts injurious to the property of the orators situated there." It was held that the court had jurisdiction to issue an injunction restraining the defendant from destroying the plaintiff's dam in Maine. Chief Justice GILCHRIST delivered the opinion of the court in which he cites and reviews the numerous authorities, English and American, on the subject. Of the relief sought by the plaintiff, he says: " Nothing more is asked than that the respondent, a citizen of New Hampshire, and residing within her limits, shall be subject to her laws, and that, being within reach of the process of this court, he shall be forbidden to go elsewhere and commit an injury to the property of other citizens, situated here, and entitled to the protection of our laws." The chief justice concludes his opinion as follows : " It would be a great defect in the administration of the law, if the mere fact that the property was out of the state could deprive the court of the power to act. As much injustice may be perpetrated in a given case, against the citizens of this state, by going out of the jurisdiction and committing a wrong, as by staying here and doing it. The injustice does not lose its quality by being committed elsewhere than in New Hampshire, and as the legislature has conferred upon the court the power to issue injunctions whenever it is necessary to prevent injustice, it is the duty of the court to exercise that power upon the presentation of a proper case, and when it can be done consistently with the acknowledged practice in courts of equity. As the principle which is sought to be applied here, has been recognized for nearly two hundred years, we have no hesitation in holding that the court has jurisdiction to issue the injunction prayed for."

The same principle is laid down by text writers. " Where the subject-matter is situated within another state or country,

but the parties are within the jurisdiction of the court," says Mr. Pomeroy (Pomeroy's Equity Jurisprudence, sec. 1318), " any suit may be maintained and remedy granted which directly affect and operate upon the person of the defendant and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but indirectly affected by the relief granted."

The rule thus announced by the text-writers, supported by the decisions of the courts, sustains the authority of the court below in protecting the rights of the mortgagee or his assignee against their infringement by the York Manufacturing Company, if the facts warranted the intervention of a chancellor. All the parties were within the jurisdiction of the court. Aquitas agit in personam. This maxim is the basic principle of equitable jurisdiction. The decree operates upon and is enforced against the person and not the property. The purpose of the decree here is to control the action of the defendant, the York Manufacturing Company, a citizen of this state and amenable to the process of its courts, and to prevent it from doing an act which is illegal and would result in irreparable injury to the plaintiff, also a citizen of the state. For a chancellor in this jurisdiction to deny aid under the circumstances would be to refuse to enforce the law in a contest between citizens of this commonwealth and, therefore, for the state to abdicate its sovereignty. So long as an individual is a citizen of a state he is subject to the process and decrees of its courts of equity, regardless of the locus of the subject-matter indirectly affected by the litigation. It is conceded that the decree here will not affect the mortgaged premises in New York, nor could an officer acting in obedience to our process redeliver the property to the plaintiff if the defendants should violate the injunction. The lack of such authority, however, does not oust the jurisdiction. As held in all the cases, the remedy for disobedience of the restraining order would be directly against the defendants, as in other cases where the commands of a court of equity are disregarded. In Penn v. Lord Baltimore, supra, a bill for the specific performance of a contract executed in England, concerning the line between the colonies of Pennsylvania and Maryland, Lord Hardwicke said in reply to the argument that the

decree could not be enforced: "If they could not at all, I agree it would be in vain to make a decree, and that the court cannot enforce their own decree in rem in the present case. But that is not an objection against making a decree; for the strict primary decree in this court, as a court of equity, is in personam."

We are inclined to agree with the court below, although it is not necessary to determine the question here, that this is a Pennsylvania contract, to be performed in the state of New York, and that the law of that state must prevail in ascertaining the rights of the parties under the conditional sale and mortgage. Story's Conflict of Laws (7th. ed.), sec. 280, and authorities cited to sustain the text; Knowles's Loom Works v. Vacher (57 N. J. Law, 490), 33 L. R. A. 305, is similar in principle to this case and it sustains the ruling of the trial court. There it is said: "The situs of the property, and not the lex loci contractus, determines the validity of such sales. The contract in this case was made in New York, but the property was to be delivered, and was delivered, to and held by the purchaser in this state. Great contention and uncertainty as to the title to personal property would be produced if purchasers and mortgagees were bound to ascertain whether the vendor or mortgagor acquired title in another state before they could contract with safety in reference to it." It is unquestionably true that under the law of Pennsylvania the conditions imposed by the contract would be void as against the mortgagee, and that the York Manufacturing Company could not enforce them here: Forrest v. Nelson Bros. & Co., 108 Pa. 481. Were the property in this state, the refrigerator would be a fixture, a part of the brewery, and consequently bound by the mortgage: Otto v. Sweatman, 166 Pa. 217.

Nor do we think the conditions imposed by the contract are valid and can be asserted against the mortgagee under the New York statute. We agree with the learned trial judge in his conclusion on this point. The decisions of the lower courts of New York, holding a contrary view, are not binding upon us in the absence of a decision of the court of last resort of that state. The construction of a statute of a state by its highest tribunal will ordinarily be received as conclusive in the courts of other states: Van Matre v. Sankey 39 Am. St. Rep. (Ill.),

196 ; Walker v. State Harbor Commrs., 17 Wall. (U. S.) 648. New Jersey has a statute similar to the New York statute involved in this controversy requiring contracts for the conditional sale of personal property to be recorded. In construing the statute the supreme court of New Jersey, in Knowles Loom Works v. Vacher, supra, says : " The manifest purpose of the act is to render inefficacious the conditional sale of all goods held in this state where the contract of sale is not recorded. . . . The object of the statute is to get rid of secret and latent equities. Public policy, as asserted in the extension of the registry laws, requires that the public record should show the ownership of personal property, and a construction which is favorable to that end should be given to the act." Such is clearly the purpose of statutes requiring a public record to disclose the ownership of personal property. Here the property was a refrigerating machine, which was to be manufactured and delivered by the York Manufacturing Company to Sternberg at Port Jervis, New York. So far as appears by the evidence, it was delivered immediately after it was made and its possession has since been in the purchaser or those holding under him. It was installed in the brewery and became a part thereof prior to the date and recording of the mortgage given the National Bank of Port Jervis. By the failure to observe the recording act of New York, the York Manufacturing Company misled the mortgagee, which advanced its money on the faith of the brewing plant, an important and necessary part thereof being the refrigerator. If the contention of the appellee is to prevail, the very purpose of the New York statute requiring notice of conditional sales of personal property to be given by the records, will be defeated as to the title to a large class of personal property in that state. Public policy and the rights of creditors, as well as the plain intention of the legislature in the enactment of the act in question forbid such a construction of it, and until the court of last resort in New York so decides, we will adhere to a contrary construction.

The interpretation we have given the New York statute makes the law of that state the same as that of Pennsylvania as to the effect of the conditional sale. In neither state were the conditions or reservations in the contract effective against the mortgagee or its assignee, and hence it is immaterial whether

the contract be construed by the laws of New York or Pennsylvania.

This is not a bill to restrain the York Manufacturing Company from bringing suit in the state of New York for the recovery of the refrigerating machine, but the object of the bill is to enjoin that company from removing the machine from the brewery. The learned judge seemed to think that the York Manufacturing Company did not intend to remove the refrigerator by force but only by legal proceedings, and therefore held there was no " imminent danger of the violation of the rights of the plaintiff " or of irreparable injury to him which required the intervention of a court of equity. In this we think the court erred. The written notices given the plaintiff and the owners of the brewing plant were not denied by the manufacturing company. Their construction was for the court. They clearly and positively assert the intention of the York Manufacturing Company " to remove the plant immediately; " that the plant " will be removed by their employees" during the week commencing February 17, 1902; and that " we would ask you to have work stopped to facilitate such removal, as their workmen will be there during the week named." There is not even an intimation in either of the notices that legal proceedings were to be resorted to for the removal of the refrigerator; on the contrary the intention of the manufacturing company, as plainly stated in the notices, was to remove it by their workmen without any prior legal proceedings. This intention is reasserted in the answer in the following language: " The York Manufacturing Company claims and intends to assert its legal title to, and will remove or cause to be removed, said refrigerating plant and apparatus from the place where it was erected." It is idle for the York Manufacturing Company to say in the face of these positive declarations that it had no intention of removing the refrigerator until its right to do so had been legally determined. The courts of New York have been, and are, open to it and so far as appears in this record no action has yet been commenced there to determine its rights to the property. We must, therefore, regard the declarations and acts of the company as evincive of an intention to forcibly take possession of the property in dispute, which would invade the clear legal rights of the plaintiff and entitle him to injunctive relief.

The other reason assigned by the court for refusing equitable interference is that the removal of the refrigerator would not cause irreparable injury to the plaintiff. In view of the finding of the trial judge that " the refrigerator was a constituent part of the brewery plant, was attached to, and necessary for the operation of the same," we are unable to see by what method of reasoning he reaches his conclusion. Equally untenable, we think, is his finding that " it (the refrigerator) was capable, however, of being removed without serious permanent injury to the walls and other parts of the brewery, and by the substitution of another refrigerator of the same or other manufacture, operations could be continued, as conducted before the removal of the refrigerator in question." The same could be said with equal force of any other part of the machinery necessary for the operation of the brewery. Any or all of the different parts constituting the plant could be supplied, and hence, on this theory, all the machinery might be removed and no irreparable injury be done to the plant or to the owner. The same logic would permit the destruction of any building or manufactory by force, as restitution would prevent irreparable injury. Removing a constituent and necessary part of the plant prevents its operation and results in a loss of the business, compensation for which would be determinable solely by conjecture. In one sense this may not be irreparable injury, but in the legal sense it is, and will authorize the interference of a chancellor. Equity will interfere when the injury threatened would occasion damages, estimable only by conjecture and not by any accurate standard : Commonwealth v. Pittsburg & Connellsville Railroad Co., 24 Pa. 159 ; or would be ruinous to the property in the manner in which it has been enjoyed and would permanently impair its future enjoyment : Jerome v. Ross, 11 Am. Dec. (N. Y.), 484 ; Echelkamp v. Schrader, 45 Mo. 505 ; Mayor, etc., of Frederick v. Groshon, 96 Am. Dec. (Md.), 591 ; Ryan v. Brown, 100 Am. Dec. (Mich.), 154.

We have discussed the controlling questions in the case, and our conclusion is that the plaintiff is entitled to the relief he seeks in this suit. The trial court had jurisdiction, and was invested with ample power to determine and enforce the rights of the parties. The refrigerator plant being a constituent part

of and necessary to the operation of the brewery, is unquestionably subject to the mortgage now held by the plaintiff, and its removal by the defendants would result in irreparable injury which could not be adequately compensated in damages. It, therefore, follows that the prayer of the plaintiff's bill should have been allowed.

The decree is reversed, the bill is reinstated, and the court below is directed to issue the injunction in accordance with the prayer of the bill, the costs to be paid by the York Manufacturing Company, the appellee.