660 A.2d 1359

**Diedre KAZOS and Katherine Georges, Appellants,**

v.

**Anthony DIAKAKIS and Katy Diakakis, his wife, Appellees.**

Superior Court of Pennsylvania.

Submitted Feb. 28, 1995.

Filed June 26, 1995.

Sanford S. Finder, Washington, for appellants.

Nelson B. Gaugler, Pittsburgh, for appellees.

Before TAMILIA, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from the order of the Court of Common Pleas of Washington County which sustained Appellees Anthony and Katy Diakakis' preliminary objections for lack of jurisdiction over the subject matter. We affirm.

The facts and procedural history of this matter may be summarized as follows: Nicholas Diakakis, who died while a resident of Greece, owned real estate situate on the island of Rhodes. Diakakis had four children, Appellee Anthony Diakakis, Appellant Katherine Georges, Marsha Stamatakis,[1] and one who was deceased at the time of his death. The deceased child had two children of her own, including Appellant Diedre Kazos. Appellee Anthony Diakakis, acting as attorney-in-fact for the above mentioned heirs of Diakakis, sold the real estate on the island of Rhodes for an equivalent of $72,000.00. Appellee Anthony Diakakis placed the money into bonds, *see* Exhibit E, and deposited them into an account in Greece

---

1. Ms. Stamatakis is not a party to this action.

which earned twenty percent interest. Appellee Anthony Diakakis allegedly attempted to bring the bonds into the United States, however, they were seized at customs and were returned to Greece. On or about September 9, 1993, Appellants filed a complaint against Appellees seeking to enforce a "constructive trust and obtain an order requiring [Appellees] to immediately return the bonds and their proceeds to Washington County, Pennsylvania and account therefore and disburse the same and pay any losses occasion[ed] by their handling of the matter." Complaint, ¶ 11. Appellees filed seven preliminary objections to the complaint. The trial court, addressing only one of the objections, found that it lacked jurisdiction to hear the case. In sustaining the preliminary objection the trial court stated:

> [Appellants] are claiming a financial interest in bonds which are located in Greece. Pa.C.S.A. § 5304 provides that the tribunals of this Commonwealth have jurisdiction over documents situated within this Commonwealth whether or not the persons owning or claiming interest therein are subject to the jurisdiction of the tribunals of this Commonwealth. The statute does not provide for documents which are not located within the Commonwealth. The bonds in question here are not now and have never been located in this Commonwealth. Therefore, we do not have jurisdiction over the bonds which are presently located in Greece and [cannot] impose a constructive trust over them.

Order, 8/22/94, at pp. 1–2. This appeal followed.

In their appeal, Appellants first assert that 42 Pa.C.S.A. § 5304 cannot be read to exclude subject matter jurisdiction where the trial court otherwise has personal jurisdiction over the parties.[2] Section 5304 provides:

§ 5304. Documents

The tribunals of this Commonwealth shall have jurisdiction over documents situated within this Commonwealth whether or not the persons owning or claiming interests

---

2. Appellees both reside in Washington County.

therein are subject to the jurisdiction of the tribunals of this Commonwealth.

42 Pa.C.S.A. § 5304. In essence, Appellants aver, without further discussion, that the trial court erred in drawing the negative inference from this section that the trial court did not have jurisdiction over documents which were not located in the Commonwealth. Appellants aver that since Appellee Anthony Diakakis is a fiduciary to Appellants, and that he has control over the personal property (the bonds), the trial court should be able to entertain this action. Moreover, Appellants argue that despite the location of the res in question, they have filed their action in a court of equity and that court "has the power to compel a Defendant to do all necessary things which he could do voluntarily, to give effect to the decree against him." Appellants' Brief, at p. 12.

Pennsylvania Rule of Civil Procedure 1028 prescribes that preliminary objections may be granted on the ground that there is a "lack of jurisdiction over the subject matter of the action or the person of the defendant[.]" Pa.R.C.P. 1028(a)(1), 42 Pa.C.S.A. "When a party uses a preliminary objection in the nature of a petition raising a question of subject matter jurisdiction, the court's function is to determine whether the law will bar recovery due to the lack of such jurisdiction." *Philadelphia Housing Authority v. Barbour*, 405 Pa.Super. 140, 143, 592 A.2d 47, 48 (1991), *aff'd.*, 532 Pa. 212, 615 A.2d 339 (1992).

Appellants' claims are without merit, and thus, we affirm the order of the trial court. The trial court properly interpreted 42 Pa.C.S.A. section 5304. By negative inference, it can be said that the Commonwealth does not have jurisdiction over documents situated outside of the Commonwealth. Moreover, this inference is correct given the general proposition that "a court cannot exercise in rem jurisdiction over property outside its own state." *Taddei v. Taddei*, 299 Pa.Super. 318, 322, 445 A.2d 773, 775 (1982). In their prayer for relief, Appellants requested a disbursement of the money held in the Greek bonds or that a constructive trust be imposed

upon Appellees for the amount of the bonds. Thus, in essence, the primary issue before the trial court, as presented in Appellants' complaint, is what is to become of the bonds. Because the bonds are located in Greece, a location clearly outside of this Commonwealth, the trial court properly determined that it did not have jurisdiction to render a decision affecting them.

Finally, we add that merely because Appellants filed their claim in equity and because Appellees were residents of Washington County does not impose upon that court jurisdiction to hear the dispute. In support of their position, Appellants cite *Cohn v. Weiss*, 356 Pa. 78, 51 A.2d 740 (1947), which states:

When a court acts in personam, . . . it is not restricted by geographical boundary lines. 30 C.J.S., Equity, sec. 81, page 439, makes this statement: "The general rule is that, where a court of equity has jurisdiction of the person of defendant, it may render any appropriate decree acting directly on the person, even though the subject matter affected is outside the jurisdiction; a decree does not operate directly on a res which is beyond the territorial jurisdiction of the court, but the court may, acting in personam, coerce action respecting it." 30 C.J.S., Equity, sec. 82, p. 441, lays down this principle: "A court of equity * * * may compel action with respect to land which lies beyond its jurisdiction, as by conveyance thereof, provided it can enforce its decree by the exercise of its powers over the persons before it."

*Cohn*, 356 Pa. 78, 51 A.2d at 744. However, the Court added:
'Where the necessary parties are before a court of equity, it is immaterial that the res of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the lex loci rei sitae, which he could do voluntarily, to give effect to the decree against him. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree in personam according to

those equities, and enforce obedience to their decrees by process in personam.'[ ]

*Id.,* at 745 (*quoting Schmaltz v. York Manufacturing Company,* 204 Pa. 1, 53 A. 522 (1902)).[3]

Given the rationale of *Cohn,* we find that the trial court sitting in equity could not compel Appellees to act in relation to the bonds located in Greece. The trial court could not enter an order which would compel Appellees to act "voluntarily" in relation to the bonds. The record reveals that the land on the island of Rhodes that was sold by Appellees may be the subject of future litigation in Greece. Thus, if the title to the land is not found to be clear, Appellees will have to return the money to the buyer. *See* Exhibit D. Moreover, in a memorandum from the American Embassy in Athens, Greece, there is a detailed explanation of how foreigners may remove funds from Greece that are received through the sale of property. *See* Exhibit F. Thus, the trial court cannot compel Appellees to act in relation to the bonds when it is the law of Greece that controls the distribution of the bonds.

Order affirmed.

TAMILIA, J., files a dissenting opinion.

TAMILIA, Judge, dissenting:

I respectfully dissent in order to address what I believe to be the majority's fundamental misapplication of Pennsylvania jurisdictional law. Not only does the majority draw a completely unwarranted and improper negative inference from 42 Pa.C.S. § 5304, but it also mistakenly holds that in rem jurisdiction over the Greek bonds is necessary to an adjudication of appellants' claims. To the contrary, the following review of Pennsylvania and national authority clearly demonstrates that *in personam* jurisdiction, which the trial court undeniably possessed over the parties, was sufficient to empower an adjudication of this action, despite the fact that a foreign res might ultimately be affected.

**3.** *Lex loci rei sitae* is defined as "[t]he law of the place where a thing or subject-matter is situated." *Black's Law Dictionary* 821 (5th ed.1968).

Initially, the Order of the trial court granting appellees' preliminary objections and dismissing appellants' action for want of subject matter jurisdiction is premised solely on section 5304, which provides:

§ 5304. Documents

The tribunals of this Commonwealth shall have jurisdiction over document which are within this Commonwealth whether or not the persons owning or claiming interests therein are subject to the jurisdiction of the tribunals of this Commonwealth.

The trial court and the majority draw a negative inference from this section and conclude that it mandates the dismissal of appellants' complaint because the bonds in question are not located within the Commonwealth, despite the fact that the lower court clearly had jurisdiction over both parties. This construction is not only unwarranted and unsupportable but it is explicitly belied by the legislative history of section 5304 and Pennsylvania case law.

The object of statutory construction is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921. Section 5304 was taken verbatim from Mich.S.A. 27A.761. *See* Source Note to SB 935, PA House of Representatives, Legislative Journal, June 29, 1976, p. 5857. In turn, section 27A.761 was taken verbatim from Restatement, Conflict of Laws, § 103, which became section 61 of the Second Restatement. *See* Practice Comment to § 761, 32 Michigan Compiled Laws Annotated, 600.761. Section 61 appears in Chapter 3, the jurisdictional chapter of the Restatement, under the heading "Judicial Jurisdiction Over Things." The other relevant heading under Chapter 3 is "Judicial Jurisdiction Over Persons." The Introductory Note to Chapter 3 describes these headings as "the *various* bases for the existence of judicial jurisdiction in a state." (Emphasis added.)

Thus, section 61, the prototype to section 5304, was conceived as a basis of "jurisdiction over things," a basis *alternative* to the bases provided for obtaining "jurisdiction over persons...." The section cannot therefore be read as pre-

cluding the proper exercise of "jurisdiction over persons" merely because that exercise will ultimately effect a foreign document. In short, the power of the court in this case is premised on its "jurisdiction over persons," and section 5304 is simply inapplicable because it was originally intended only as a basis of "jurisdiction over things." That section 5304 was never intended to apply where jurisdiction is had over both parties in a suit concerning foreign documents is further emphasized by the fact that such an instance is specifically provided for in Chapter 3 under "jurisdiction over persons." Section 53 of the Restatement provides:

> § 53. Decree to Be Carried Out in Another State
>
> A state has power to exercise judicial jurisdiction to order a person, who is subject to its judicial jurisdiction to do an act, or to refrain from doing an act, in another state.

The official Reporter's Note to section 53 specifically applies this section to cases which order the production of documents located in foreign countries. For instance, in *United States v. First National City Bank*, 396 F.2d 897 (2d Cir.1968), a New York bank was held in contempt of court for failing to produce documents possessed or controlled by the bank, but located in Germany. In summarily rejecting the notion that it lacked jurisdiction over the action, the court held:

> It is no longer open to doubt that a federal court has the power to require the production of documents located in foreign countries if the court has *in personam* jurisdiction of the person in possession or control of the material.

*Id.* at 900–901 (emphasis in original). *See also Societe Internationale, etc. v. McGranery*, 111 F.Supp. 435 (D.D.C.1953) (plaintiff's suit dismissed for failure to comply with Order directing production of documents located in Switzerland) (dismissal ultimately reversed, but not on jurisdictional grounds, when Supreme Court found plaintiff to be in substantial compliance with Order, *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). The United States Supreme Court has also denied certiorari to review a case with precisely the same holding. *First National City Bank of New York v. Internal Revenue Service etc.*, 271

F.2d 616 (2d Cir.1959), *cert denied,* 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960).

It is clear from a review of these cases that the courts therein assumed jurisdiction over suits involving foreign documents solely on the basis that *in personam* jurisdiction existed over the parties. Moreover, they did so without even considering section 61 of the Restatement, a section which, as noted, is identical to the section relied on by the majority herein as mandating dismissal of appellants' complaint. Further, it is not relevant that the aforementioned cases were federal court decisions because jurisdiction was explicitly premised on the fact that the courts had *in personam* jurisdiction over the parties. Jurisdiction was not based on any federal enabling statute. Also, as noted, these cases are specifically cited in the Reporter's Note to section 53 of the Restatement, which discusses "state" jurisdiction.

In addition to the Restatement and federal courts, other authorities suggest that the exercise of jurisdiction over appellants' complaint would have been proper. For example, 30A C.J.S., Equity, § 85 states:

§ 85. Personal Jurisdiction and Foreign Subject Matter

A court of equity having jurisdiction of defendant's person may render any appropriate decree acting directly on the person, even though the subject matter affected is outside the jurisdiction, and *even in a foreign country;*

.    .    .    .    .

Such a decree does not operate directly on a res which is beyond the territorial jurisdiction of the court, but the court may, acting in personam, coerce action respecting it.

(Emphasis added.)

Thus, the majority's conclusion that "a court cannot exercise in rem jurisdiction over property outside its own state," while a correct statement of law, is absolutely irrelevant to the present case. The exercise of jurisdiction sought presently is not "in rem," but is "in personam" because the court has jurisdiction "of defendant's person." Therefore, contrary to the holding of the majority, a court may "coerce action re-

specting" the bonds without transforming the action to one in rem.

While the views of the Restatement, federal courts and commentators discussed above are persuasive on the issue under consideration, the majority is, of course, free to reject them. However, I believe that the binding precedent of this Commonwealth also indicates that jurisdiction lies in the instant action.

*Schmaltz v. York Mfg. Co.*, 204 Pa. 1, 53 A. 522 (1902), is a seminal case discussing the jurisdictional aspects of actions between residents of this state concerning a foreign res. In *Schmaltz*, the defendant, a corporate resident of Pennsylvania, sold and delivered a refrigeration machine to a New York brewery, but retained title to the machine until payments were completed. The brewery then installed the machine as an integral part of its plant and subsequently mortgaged the plant, along with the machine. The mortgage was then assigned to plaintiff, a Pennsylvania resident. Upon the brewery's default of payments to defendant and bankruptcy, defendant sought to retrieve the machine and plaintiff petitioned equity for an injunction. Finding jurisdiction "[t]he important and controlling question in the case," our Supreme Court proceeded to an exhaustive review of state and national law on the power of courts to adjudicate, *in personam*, issues affecting foreign land and property. The Court began by citing the United States Supreme Court, as well as courts from Maryland, New York and Louisiana for the proposition that:

> While the situs of the property in dispute is in another state and a decree of a court of this state cannot operate upon or directly affect it, yet we think that a court of equity in this state, having jurisdiction of all the parties, can determine their rights to the property, and by proper process enforce them in personam....

*Id.* at 13, 53 A. 522 (citations omitted).

Our Supreme Court then engages in a discussion which repudiates the negative inference drawn from section 5304 by the trial court and the majority, namely, that since section

5304 grants jurisdiction over all documents within the Commonwealth, it necessarily precludes jurisdiction over all documents not within the Commonwealth, regardless of the residency of the parties. The Court notes:

> Where property in controversy is within the limits of the state, and the claimant resides abroad, the chancery court has an undeniable jurisdiction over the case. *So where the party defendant is within the state, and the land or other property in contest is beyond its limits,* ... we apprehend there is no want of jurisdiction in the chancellor. To enforce a decree in a case of this kind the proceedings may be in personam, as well as by injunction, to recover the possession of the thing disputed.

*Id.* at 15, 53 A. 522, citing *Carroll v. Lee*, 3 G & J 504 (Md.1832) (emphasis added).

Since the trial court in the instant case premised its dismissal of appellants' complaint solely on the improper negative inference drawn from section 5304, the rationale of *Schmaltz*, standing alone, warrants reversal. Additionally, however, the *Schmaltz* Court also discussed the following Pennsylvania Supreme Court decisions which all assumed jurisdiction over actions concerning a foreign res because the litigants were residents of this state: *Kendall v. McClure Coke Co.*, 182 Pa. 1, 37 A. 823 (1897) (Court enjoins Pennsylvania creditor from instituting suit in another state to secure a preference over other creditors to lands in the other state); *Vaughan v. Barclay*, 6 Whart. 392 (Court compels conveyance by Pennsylvania trustee of an estate in lands located in another state); *Clark v. Clark*, 180 Pa. 186, 36 A. 747 (1897) (Pennsylvania trustee required to account for real and personal property over which Court had no jurisdiction); *Jennings Bros., and Co. v. Beale*, 158 Pa. 283, 27 A. 948 (1893) (Court enjoins Pennsylvania resident from trespassing on lands located in another state).

The *Schmaltz* Court, deciding that "reason and the weight of authority sustain the jurisdiction" over plaintiff's suit, *Schmaltz, supra* at 13, 53 A. 522, concluded as follows:

All the parties were within the jurisdiction of the court. Aquitas against in personam. This maxim is the basic principle of equity jurisdiction.

.        .        .        .        .

For a chancellor in this jurisdiction to deny aid under the circumstances would be to refuse to enforce the law in a contest between citizens of this commonwealth and, therefore, for the state to abdicate its sovereignty. So long as an individual is a citizen of a state he is subject to the process and decrees of its courts of equity, regardless of the locus of the subject-matter indirectly affected by the litigation.

*Id.* at 17, 53 A. 522. Subsequent to *Schmaltz,* a variety of cases assumed jurisdiction over actions brought by Pennsylvania residents concerning out-of-state personalty and land.

For instance, in *Newman v. Shreve,* 229 Pa. 200, 78 A. 79 (1910), the Court ordered an accounting of proceeds from the sale of land located in New Jersey because all parties were properly before the Court.

Further, *Cohn v. Weiss,* 356 Pa. 78, 51 A.2d 740 (1947), a case cited by both parties and the majority, decreed the specific performance of a contract involving New Jersey real estate on the basis that *in personam* jurisdiction was had over the parties. In support of its holding, the *Cohn* Court quotes Chief Justice Marshall of the United States Supreme Court as follows:

[T]he principles of equity give a court jurisdiction wherever the person may be found, and the circumstance, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction.

*Id.* at 86, 51 A.2d at 744, *citing Massie v. Watts,* 6 Cranch 148, 3 L.Ed. 181 (1810). The *Cohn* Court also quotes extensively from *Schmaltz.*

In *Drummond v. Drummond,* 402 Pa. 534, 167 A.2d 287 (1961), our Supreme Court rejected out of hand defendant's preliminary objection contending that the court lacked juris-

diction to order defendant, a Pennsylvania resident, to act or refrain from acting in relation to New Jersey real estate.

Likewise, in *Selig v. Selig*, 217 Pa.Super. 7, 268 A.2d 215 (1970), the court assumed jurisdiction over a foreign attachment proceeding where it had *in personam* jurisdiction of the garnishee-executor, despite the fact that the res involved was a New Jersey bank account.

Moreover, our Court in *Whitmer v. Whitmer*, 243 Pa.Super. 462, 365 A.2d 1316 (1976), demonstrates with particularity the flaw in the majority's assumption that an adjudication of appellants' complaint requires in rem jurisdiction. In *Whitmer*, wife, a resident of Florida, sued husband, a Pennsylvania resident, in a Florida court for divorce. Husband entered a general appearance in Florida to contest the divorce action. Husband then ignored several Orders of the Florida court relating to child support and the production of documents from his Pennsylvania business. The Florida court thereafter entered a judgment, ex parte, dissolving the parties' marriage and resolving numerous other issues. The judgment also stated that it "shall act as a conveyance" to wife of a one-half interest in husband's Pennsylvania business. Husband then contested wife's partition action in Pennsylvania on the basis that the Florida court lacked jurisdiction over the Pennsylvania business. Our Court, agreeing with husband, held:

> [T]he jurisdiction of the Florida court over the person of appellee did not give it jurisdiction *in rem* over his property located outside the state of Florida. The basis of jurisdiction over property is the presence of the subject property within the territorial jurisdiction of the forum state.... Plainly it was beyond the jurisdiction of the Florida court to make a conveyance to appellant of a one-half interest in appellee's Pennsylvania property.

*Id.* at 469, 365 A.2d at 1319 (citations omitted; emphasis added). The court then added:

> *Having personal jurisdiction over appellee, the Florida court might have ordered appellee to convey a one-half interest in his Pennsylvania property to appellant* and, if

necessary, enforce its order by contempt proceedings.... The court might also have followed through on the stipulation at one time in effect whereby appellee was to convey the Pennsylvania assets to a trustee who would hold them subject to the order of the court. For some unexplained reason, this stipulation was never acted upon.

But instead of acting through the appellee over whom it had jurisdiction, the Florida court elected to proceed in rem against the Pennsylvania property by purporting to make a conveyance of a one-half interest in it to appellant. This was beyond its power....

*Id.* (emphasis added).

Therefore, even though the ultimate effect on husband's Pennsylvania business would have been identical to that of the forbidden exercise of in rem jurisdiction, the Florida court could have compelled husband to make a conveyance, or deliver the property to a trustee, because Florida possessed *in personam* jurisdiction of husband. This is precisely the point missed by the majority when it concludes that appellants' action is in rem because "in essence, the primary issue ... is what is to become of the bonds." (Majority Opinion by Hudock, J., p. 93.)

All of the foregoing cases clearly demonstrate that the lower court had the power to adjudicate appellants' claims. That power is premised on the court's undeniable possession of *in personam* jurisdiction over the parties. In rem jurisdiction is neither possessed nor required. The appellants' complaint prays for the following relief:

WHEREFORE, showing as above, your Honorable Court is requested to:

(a) *Order both Defendants* to immediately either return the bonds to the United States or deposit with the Court the sum of seventy-two thousand ($72,000.00) dollars in American monies with interest so that the same may be distributed in accordance with law to the rightful heirs or

(b) *To hold that the Defendant's are Trustees* and impose a constructive trust not only upon the sales proceeds but on

any other assets which the Defendant's own so as to adequately recompense the Plaintiff's [sic] for their losses (c) such other relief including an accounting as the Court may direct.

Appellant's Complaint (emphasis added).

This prayer explicitly requests that the court exercise power *over the appellees* and not over the bonds. The fact that the ultimate result may be the same is, as has been demonstrated, of no consequence.

Nor am I persuaded otherwise by the fact that Greek law determines whether appellees may ultimately bring the bonds to this country. As the majority recognizes, equity has the power to order a defendant to do all things, according to the lex loci rei sitae, which he may voluntarily do. This principle is established beyond the need for citation. There is no doubt that the lex loci rei sitae provides that appellee can voluntarily petition for the release of the bonds. *See* Exhibit F. The resolution of such a petition is not for me, nor the majority, to predict. At any rate, granting the relief requested by appellants, especially as to an accounting, is not dependent upon appellees' bringing the bonds to America. More importantly, while the likelihood of appellees' importing the bonds may be a relevant consideration in tailoring appellants' remedy, it is completely irrelevant to a threshold determination of jurisdiction. Lastly, I note that courts of this country have exercised *in personam* jurisdiction to compel the production of documents even where such production may result in the liability of a defendant under the laws of a foreign country. *United States v. First National City Bank*, 396 F.2d 897 (1968); *see also* Restatement (Second), Foreign Relations Law of the United States, § 39(1) (1965): "A state having jurisdiction to prescribe or enforce a rule of law is not precluded from exercising its jurisdiction *solely* because such exercise requires a person to engage in conduct subjecting him to liability under the law of another state having jurisdiction with respect to that conduct."

Finally, the majority claims that because the land, which was sold for the money which was converted into the bonds in question, may be the subject of future litigation, the appellees may at some point have to return the money to the buyer. Again, this issue may be relevant to the scope of appellants' remedy (it is clearly irrelevant as to an accounting) but it is not relevant to a determination of jurisdiction.

In conclusion, I believe that the negative inference drawn from section 5304 by the trial court and the majority is contradicted by the legislative history of section 5304 as well as decisions of our Supreme Court. Additionally, an uninterrupted line of Pennsylvania precedent spanning in excess of a century mandates the exercise of jurisdiction over appellants' complaint. This overwhelming weight of authority is emphasized by the majority's failure to cite a single case where a court refuses the exercise of jurisdiction over an action concerning a foreign res when jurisdiction exists over the parties. Hence, I dissent.