Tamara L. LESKO, Plaintiff,

v.

CLARK PUBLISHER SERVICES, Clark Worldwide Transportation, The Clark Group, and Clark Distribution Systems, Defendants.

Civ. A. No. 1:CV–94–0984.

United States District Court,
M.D. Pennsylvania.

Sept. 21, 1995.

Lori K. Serratelli, Serratelli & Schiffman, Harrisburg, PA, James W. Carroll, Jr., Pittsburgh, PA, David M. Fineman, Tabakin, Carroll & Curtin, Pittsburgh, PA, for plaintiff.

Elizabeth A. Dougherty, Bruce D. Bagley, Carol A. Steinour, McNees, Wallace & Nurick, Harrisburg, PA, for defendants.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion for partial summary judgment. Briefs have been filed on both sides and the motion is ripe for disposition.

### I. Background

On November 8, 1989, Plaintiff Tamara Lesko filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") against Clark Publisher Services ("Clark"). She alleged that she was discriminated against by Clark on the basis of gender when she was: (1) denied equal pay while employed as Terminal Manager in 1988 and 1989; (2) demoted from Terminal Manager to Ancillary Services Manager on April 3, 1989; and (3) laid off by Clark on September 19, 1989. She also alleged that she was sexually harassed by Richard Foster, a Clark employee, in 1987. (*See* Plaintiff's PHRC complaint, Lesko affidavit at exhibit 10.) The complaint was simultaneously filed with the Equal Employment Opportunity Commission ("EEOC"). On November 10, 1993, Plaintiff filed an amended complaint with PHRC in which she added a claim that her layoff was in retaliation for her sexual harassment complaint. (*See* Plaintiff's amended PHRC complaint, Lesko affidavit at exhibit 11.)

In the instant action Plaintiff alleges numerous employment discrimination claims under 42 U.S.C. § 2000e ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") against the four Defendant employers. Plaintiff's amended complaint in this action sets out three claims which were not asserted in her PHRC complaint or amended complaint. First, Plaintiff alleges that she applied for a position as Safety Director in 1986, prior to being hired as a document processor, and was rejected in favor of a less qualified male. (Amended complaint at ¶ 15.) Second, she claims that in 1987 she sought a promotion to Terminal Manager and was rejected in favor of a less qualified male. (Amended complaint at ¶ 24). Finally, Plaintiff asserts that in 1989 she was sexually harassed in the workplace by James Lachman and Joseph Andrel. (Amended complaint at ¶ 30.)

Defendants have moved for summary judgment with respect to three issues, the first two of which pertain to numerous of the claims asserted by Plaintiff. First, Defendants argue that the three claims raised for the first time before this court must be dismissed for failure to exhaust administrative remedies. Second, they claim that these three claims and several others are time barred under Title VII and the PHRA. Third, Defendants maintain that their backpay liability is tolled as of the date they allegedly offered to reinstatement Plaintiff to a comparable position with Clark. The court will address each of these issues in turn.

### II. Discussion

#### A. Summary Judgment Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law that governs the case. *Anderson v. Liberty Lob-*

by, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute is genuine only if a reasonable jury could return a verdict for the nonmoving party. *Id.* Following a determination that no genuine dispute of material facts exists, the moving party must demonstrate that it is entitled to judgment as a matter of law. Once the moving party has made and supported its motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## B. *Exhaustion*

Defendants seek summary judgment with respect to Plaintiff's 1986 failure to hire claim, her 1987 failure to promote claim, and her 1989 sexual harassment claims on the ground of failure to exhaust. Plaintiff maintains that these three claims are in fact properly before this court.

It is settled that a Title VII claimant must exhaust administrative remedies before filing a suit in federal court. *See, e.g., Tolbert v. United States,* 916 F.2d 245, 247–48 (5th Cir.1990) (per curiam). Once a charge is filed with the PHRC and/or the EEOC, "the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination ...' " *Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 966 (1978) (citing *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3rd Cir.1976)). The court in *Hicks* indicated that one relevant consideration when applying this rule is whether there is evidence suggesting that the plaintiff would have told the administrative investigator about the allegations in question if interviewed about her complaint.

*Hicks,* 572 F.2d at 966. An affirmative answer to this question suggests that a reasonable investigation would have uncovered the claim or claims, regardless of whether such an investigation actually occurred. *Id.* at 966–67.

Plaintiff alleges that when she met with the PHRC employee conducting intake, Benjamin Simmons, she described all of the events which now appear in her amended complaint in this action. (Lesko affidavit at ¶ 3.) She maintains that Mr. Simmons, who drafted the complaint, advised her that "he was primarily interested in ... [her] termination and that he was not interested in the other events described." (Lesko affidavit at ¶¶ 4–5.) Plaintiff further states that at the PHRC fact-finding conference held on February 9, 1990, at which PHRC investigator Carolee Kpakiwa was present, there were detailed discussions of: (1) Clark's failure to promote Plaintiff to Terminal Manager in 1987; (2) Plaintiff's sexual harassment claims against Joseph Andrel and James Lachman; and (3) Plaintiff's retaliation claim. (Lesko affidavit at ¶ 10.) Plaintiff does not contend that her 1986 failure to hire claim was discussed at the fact-finding conference.

Defendants have submitted no evidence in opposition to Plaintiff's contentions that she told the PHRC intake employee of her 1986 failure to hire claim, her 1987 failure to promote claim, and her 1989 sexual harassment claims. Nor have they offered evidence contradicting her statement that at the PHRC fact-finding conference the 1987 failure to promote claim, the 1989 sexual harassment claims, and the 1989 retaliation claim were discussed in detail. Indeed, Defendants do not contest Plaintiff's allegations regarding the intake interview and the fact-finding conference, but rather appear to believe that such claims do not contravene their exhaustion argument.

The court believes that raising claims before the PHRC's intake representative and again before its investigator at the fact-finding conference is sufficient to require the conclusion that a reasonable investigation on the part of the agency would have disclosed such claims. However, solely on the basis of

Plaintiff's allegation that she raised a claim before the PHRC intake representative, and where such claim was not raised at the fact-finding conference at which Plaintiff was represented by counsel, the court cannot conclude that the agency investigation could reasonably be expected to discover the claim. Accordingly, the court finds that Plaintiff's 1987 failure to promote claim, her 1989 sexual harassment claims, and her 1989 retaliation claim are within the legitimate scope of this law suit, while her 1986 failure to hire claim is not.[1]

### C. Timeliness Of Plaintiff's Claims

Defendants contend that the following claims asserted by Plaintiff are time barred: (1) the 1986 failure to hire claim; (2) the 1987 sexual harassment claim against Richard Foster; (3) the 1987 failure to promote claim; (4) the 1988 and 1989 unequal pay claim; (5) the 1989 demotion claim; and (6) the 1989 retaliation claim. Plaintiff responds that all of the above claims are excepted from the timely filing requirement under a "continuing violation" theory, and because Defendant failed to post required notices.

■■■ Title VII provides that in any state with a fair employment practice agency, such as PHRC, charges must be filed with the EEOC within 300 days of the alleged unlawful conduct. 42 U.S.C. § 2000e–5(e)(1). Under the PHRA, charges must be filed within 180 days of the alleged discrimination. 43 Pa.S.A. § 959(h). In *West v. Philadelphia Electric Company*, 45 F.3d 744 (3rd Cir. 1995), the Third Circuit recently addressed the proper application of these limitations periods in the "continuing violation" context. The *West* court stated that a plaintiff "may pursue a Title VII claim for discriminatory conduct that began prior to the filing period

if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination...." *Id.* at 754. To satisfy the continuing violation doctrine, a plaintiff must demonstrate (1) that at least one act occurred within the controlling filing period; and (2) that the acts in question are part of an "on-going pattern" rather than being "isolated or sporadic." *Id.* at 754–55. The *West* court indicated that making the later determination requires considering such factors as the following:

(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

*Id.* at 755 n. 9 (citations omitted).

There is no dispute concerning whether at least one of the alleged acts occurred within the controlling filing period. Plaintiff's claim that her layoff on September 19, 1989, was based upon gender discrimination was filed on November 8, 1989, and as such was timely under both Title VII and the PHRA.

The contested question is whether Plaintiff's numerous claims, if true, should be viewed as an on-going pattern of discrimination. Plaintiff has asserted the following claims of discriminatory dispensation of employment opportunities by Clark: (1) the 1986 failure to hire claim; (2) the 1987 failure to promote claim; (3) the 1988 and 1989 unequal pay claim; (4) the 1989 demotion claim; (5) the 1989 layoff claim; and (6) the 1989 retaliation claim.

---

1. Courts have also held that a Title VII plaintiff can raise claims in the district court which are "like or related to" allegations in the administrative complaint. Some courts have treated this doctrine as essentially coextensive with the scope of the administrative investigation which can reasonably be expected to grow out of the administrative charge of discrimination. *See National Association of Government Employees v. City Public Service Board of San Antonio, Texas*, 40 F.3rd 698, 711–712 (5th Cir.1994). Nevertheless, this court believes that if a claim is determined to be outside the scope of the investigation which can reasonably be expected from the agency, it is still possible that the claim is like or related to the administrative complaint, and thus may be included in a law suit. However, in such a case the new claim must be based upon *facts alleged in the administrative complaint. See, e.g., Box v. A & P Tea Company*, 772 F.2d 1372, 1375 (1985). Facts giving rise to the 1986 failure to hire claim were not included in Plaintiff's administrative complaint and thus the claim is not "like or related to" allegations in that complaint.

The claims are essentially constituted by the same type of discrimination: allocating job opportunities and benefits in a manner which discriminates according to gender. Also, the court believes that six claims between 1986 and 1989, with at least one claim falling in each year, is sufficiently frequent to be considered on-going. Consequently, the court views the above claims, if true, as representing a pattern or practice of discrimination. To deem the alleged acts as isolated or sporadic would be to regard them as a remarkably coincidental convergence of discrimination upon Plaintiff, rather than as reflecting a systemic and persistent problem at Clark. Such a view strikes the court as both improbable and naive. Accordingly, there is a genuine issue of material fact concerning whether the allegations identified above constitute a continuing violation.[2]

Plaintiff's 1987 sexual harassment claim, also filed outside the statutory limitations period, involves a different type of discrimination than the dispensation of employment opportunities and benefits in a manner which discriminates according to gender. If the 1987 sexual harassment claim is to be viewed as part of a continuing violation, it must constitute part of a pattern or practice when considered along with Plaintiff's allegations that she faced sexual harassment by two separate individuals between approximately April and September of 1989. The court believes that the passage of roughly two years between the first and second alleged incidents of sexual harassment indicates that they were separate and distinct. Consequently, Plaintiffs 1987 sexual harassment claim cannot be exempted from timeliness requirements under a continuing violation theory.

 Plaintiff also argues that the 1987 sexual harassment claim should be exempted from timely filing requirements on the

ground that Defendant failed to post required notices informing her of her rights under Title VII and the PHRA. "[A]n employer has a statutory obligation to post in conspicuous places notices of the pertinent provisions of Title VII ..." including information specifying how to file a complaint. *Crandall v. Prudential Insurance Company*, 691 F.Supp. 814, 821 (D.N.J.1988). *See* 42 U.S.C. § 2000e–10. Failure to post such notices tolls the limitations period for filing a complaint with the EEOC until the prospective claimant acquires actual knowledge of her right to sue. *Id.* (citing *Callowhill v. Allen–Sherman–Hoff Co., Inc.*, 832 F.2d 269, 273 (3rd Cir.1987), *cert. denied,* 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988)).

Plaintiff has filed an affidavit stating that Clark did not post the required notices. (Lesko affidavit at ¶ 16.) She also indicates that she was not aware of her right to file an administrative complaint with EEOC or PHRC for sexual harassment until consulting an attorney after she was laid off. (*Id.* at ¶¶ 15–16.) Though Defendants claim in their brief that required notices were in fact posted, they have submitted no evidence in support of the contention. Consequently, the court must conclude that there remains a genuine issue of material fact as to whether Defendants posted notices required under Title VII, and if not, when Plaintiff acquired actual knowledge of her right to sue on the 1987 harassment claim.[3]

### D. *Backpay Liability*

After Plaintiff was laid off in September of 1989, Clark claims to have twice offered to reinstate her to a comparable position in 1990. Defendants contend that these alleged offers of employment to Plaintiff should toll their backpay liability.

---

**2.** The court notes that while Plaintiff's 1986 failure to hire claim may be viewed as part of a pattern or practice of discrimination, this does not save it from the fact that it was not raised below and was not within the scope of the agency investigation which could reasonably be expected to grow out of Plaintiff's administrative complaint. *See supra,* section II.B. That is, while the 1986 failure to hire claim could be excused for untimeliness, it nevertheless must be

dismissed due to failure to exhaust administrative remedies.

**3.** The court notes that the failure of notice argument also provides an alternative justification for denying summary judgment with respect to the numerous claims of discriminatory dispensation of employment opportunities and benefits.

Under both Title VII and PHRA a plaintiff has a duty to mitigate damages. With respect to this requirement under Title VII, the Supreme Court has held that a plaintiff "forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Ford Motor Company v. EEOC,* 458 U.S. 219, 232, 102 S.Ct. 3057, 3066, 73 L.Ed.2d 721 (1982). "[A]bsent exceptional circumstances the rejection of an employer's *unconditional* offer ends the accrual of potential backpay liability." *Id.* at 241, 102 S.Ct. at 3070 (emphasis added). An offer to "submit an application" is not an offer of employment, *Kilgo v. Bowman,* 789 F.2d 859, 879 (11th Cir.1986), nor is an "invitation to interview," *Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 625 (6th Cir.1983).

Defendants claim that their letters to Plaintiff dated March 16 and September 18, 1990, were actual offers of employment. However, this position is contradicted by the unambiguous language of the alleged job offers themselves. The March 16 letter states that Clark is "willing to interview" Plaintiff for a Shift Supervisor position, and the September 18 letter states that Clark is "willing to offer [Lesko] the opportunity to apply" for a Loading Dock Supervisor position. (Dougherty affidavit at exhibits A and C.) These are not unconditional offers of employment and therefore do not toll Defendants' backpay liability.[4]

Consequently, Defendant's motion for summary judgment as to the tolling of back pay liability will be denied.

---

4. Defendants argue that even if the March 16 and September 18 letters do not amount to offers of employment, Plaintiff believed that they did, and this is sufficient to toll backpay liability. However, since the principle animating the backpay liability analysis is mitigation, the proper inquiry is an objective one into whether a substantially equivalent position was actually available to Plaintiff, not an examination of Plaintiff's state of mind.

Furthermore, even if one construes the March 16 and September 18 letters as employment offers, Plaintiff maintains that the positions available were not substantially equivalent to the position from which she was laid off. Plaintiff has submitted an affidavit asserting that there are numerous material differences between the positions, including location of the job, the shift, opportunity for pay increase, and level of responsibility. (Lesko affidavit at ¶¶ 13–14.) Defendants have submitted no contrary evidence and therefore the court cannot conclude that no genuine issue of material fact exists as to whether the requirement of substantial equivalence is met.