**Victor BAILEY, Appellant,**

v.

**Richard STORLAZZI and Merit Press, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1999.

Filed April 28, 1999.

---

**1208**

William F. Joseph, Philadelphia, for appellant.

Brendan P. McGlynn, Philadelphia, for appellees.

Before JOHNSON, SCHILLER and BROSKY, JJ.

SCHILLER, J.:

¶ 1 Appellant, Victor Bailey, appeals from the Order entered in the Court of Common Pleas of Philadelphia County on June 30, 1998, sustaining Appellees' preliminary objections and dismissing the amended complaint for racial and retaliatory discrimination. We reverse.

FACTS:

¶ 2 Appellant, Victor Bailey, was hired at $7.50 an hour in November 1992 by Merit Press as a packager, unloader and driver, a job for which he had prior experience. He was the only African–American at the sixteen employee family printing business, owned and operated by Richard Storlazzi. Appellant asserts that when he was hired, his supervisor told him that Mr. Storlazzi had instructed the supervisor not to teach Appellant how to operate any of the printing machines. Nevertheless, a white employee, who like Appellant had no machine training, was subsequently hired and taught to operate a cutter. Appellant alleges that this employee, during his first six months of employment, was found to have been drinking on the job, but was neither disciplined nor terminated.

¶ 3 Appellant also claims that while he was employed at Merit Press, two employees, Mr. Storlazzi's daughter and his son-in-law, a supervisor, repeatedly used racial slurs and made derogatory racial comments in his presence. These comments were overheard by Mr. Storlazzi. Appellant complained about this behavior to all three individuals on several occasions. No action was taken against the white employees. However, on February 8, 1994, Mr. Storlazzi issued a written warning to Appellant about his repeated complaints. On October 28, 1994, Appellant asked Richard Storlazzi for vacation days without pay during November, his two year anniversary at Merit Press. The days coincided with a period when Mr. Storlazzi would be away. Appellant explained that in Mr. Storlazzi's absence he could not work under the hostile conditions. Appellant was

immediately fired. He asserts that other employees who requested vacation days were not discharged. Until this time Appellant's work performance had been excellent.

¶ 4 On November 14, 1994, Appellant filed a complaint with the Pennsylvania Human Rights Commission (PHRC) stating that Merit Press had unlawfully discriminated against him by discharging him because of his race. The claim was also filed with the Equal Employment Opportunity Commission ("EEOC"). Appellant informed the PHRC intake investigator, who prepared the administrative charge, of the disparate treatment to which he was exposed, of the racially offensive comments made by white co-workers and of his repeated complaints to Mr. Storlazzi. He provided documentation to show that he was disciplined for complaining and informed the PHRC that he was terminated because of his race and in retaliation for complaining about the hostile work environment. On May 28, 1996, despite having determined during its investigation that there was evidence "that racially-derogatory remarks had been made in the workplace," the PHRC dismissed Appellant's case.[1] Appellant requested EEOC review of the PHRC determination. On Febru-

ary 10, 1998, the EEOC issued Appellant a "right to sue" letter.[2]

¶ 5 On March 9, 1998, Appellant filed a complaint in Philadelphia County alleging that Appellees, Richard Storlazzi and Merit Press, Inc., had violated his rights under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.[3] Under both the PHRA and Title VII, Appellant asserted claims of racial and retaliatory discrimination. On March 30, 1998, Appellees filed preliminary objections demurring to the claims of racial discrimination and challenging the court's jurisdiction over the retaliation claims. Appellant filed an amended complaint on April 20, 1998, and Appellees filed new preliminary objections which Appellant opposed.

¶ 6 On June 30, 1998, the Honorable Samuel H. Lehrer sustained Appellees' preliminary objections and dismissed Appellant's complaint. Appellant timely appealed to this Court. On September 16, 1998, Judge Lehrer issued an opinion under Pa.R.A.P 1925(a) in support of his dismissal of Appellant's retaliation claims but asked this Court to reinstate Appellant's racial discrimination claims because the dismissal was "improvidently entered." Trial Court Opinion, 9/16/98, at 2.

1. Under the PHRA, in cases involving a discrimination claim "if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of this Commonwealth shall not be foreclosed." 43 P.S. § 962(c)(1). Specifically, "[if] within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant." Id. Thereafter, the complainant has two years from the Commission's date of notice to file an action in the courts of common pleas of the Commonwealth. 43 P.S. § 962(c)(1),(2). Appellant initiated his suit in the Court of Common Pleas of Philadelphia on October 24, 1997, by filing a writ of summons claiming a violation of his civil rights under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, et seq. and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq.

2. Where after investigation, the Equal Employment Opportunity Commission ("EEOC"), determines that there is reasonable cause to believe that illegal discrimination has occurred and no acceptable resolution results after mediation, the Commission is empowered to file suit against private parties. If it does not file suit, the charging party will be notified of this decision and informed of his/her right to file a private suit, which must be filed within 90 days. Ostapowicz v. Johnson Bronze Company, 541 F.2d 394, 398 (3d Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

3. The U.S. Supreme Court has held that state and federal courts have concurrent jurisdiction to adjudicate claims brought under Title VII. Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

DISCUSSION:

¶ 7 On appeal, two issues are before us: 1) whether the trial court erred in dismissing Appellant's complaint for failure to state a claim of racial discrimination; and 2) whether the trial court erred in dismissing Appellant's claim of retaliatory discrimination for failure to exhaust his administrative remedies?

 ¶ 8 Preliminarily, we note that Appellant did not include his first issue in his "Statement of Questions Involved", thereby failing to comply fully with Pa. R.A.P. 2116 which indicates that the statement of questions in an appellate brief must contain all issues on which Appellant predicates his right to relief. Generally, questions not presented in the "Statement of Questions Involved" are deemed waived. *Harkins v. Calumet Realty Co.*, 418 Pa.Super. 405, 614 A.2d 699, 703 (1992). However, this Court has held that such a defect may be overlooked where appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue. *Larson v. Diveglia*, 449 Pa.Super. 545, 674 A.2d 728, 729 n. 1 (1996), *rev'd on other grounds*, 549 Pa. 118, 700 A.2d 931 (1997); *Savoy v. Savoy*, 433 Pa.Super. 549, 641 A.2d 596, 598 (1994).

¶ 9 In the instant case, because the appeal is from an order dismissing Appel-

lant's amended complaint for failure to state a claim, there is no ambiguity about the question. Quite simply the issue to be reviewed is whether Appellant's amended complaint states a cause of action for race-based employment discrimination under the PHRA and Title VII. While Appellant did not state the issue, he did specifically incorporate in his appellate brief his argument to the court below on this issue. Moreover, Appellees provide us argument on why the trial court's order dismissing Appellant's racial discrimination claim should be affirmed. Thus, although Appellant seems to have misunderstood the procedural stance of his appeal after the trial court filed its opinion,[4] on the record before us there is no impediment to our review of Appellant's issue, and we will proceed to the merits of his first question. *Larson v. Diveglia*, supra; *Savoy v. Savoy*, supra.

¶ 10 Appellant first argues that he has averred facts in his amended complaint that state a claim of discrimination under the PHRA and Title VII. He claims that he has established the threshold *prima facie* case necessary to proceed under a "pretext theory" of disparate treatment because of his discriminatory discharge. Appellees, however, contend that Appellant's pleadings are legally insufficient under Pa.R.C.P. 1028(a)(4)[5] because he has

---

4. Appellant apparently concluded, after the trial court entered its 1925(a) opinion holding that it had erroneously sustained Appellees' preliminary objections to Appellant's claim of race discrimination, that he did not have to raise that issue on appeal. However, the appeal herein is from the *order* entered by the trial court on June 30, 1998, and not from the court's 1925(a) opinion. *See Cohen v. Jenkintown Cab Co.*, 300 Pa.Super. 528, 446 A.2d 1284, 1289 n. 8 (1982). Because the trial court's opinion was filed on September 16, 1998, more than 30 days after its order was issued and while an appeal was pending in this court, the trial court no longer had jurisdiction to change its order. Pa.R.A.P. 903, 1701; *Triffin v. Interstate Funding Co., Inc.*, 391 Pa.Super. 551, 571 A.2d 1053, 1054 (1990), *appeal denied*, 527 Pa. 618, 590 A.2d 758 (1991). Recognizing this, the trial court asked this Court to reinstate Appellant's

claims. Trial Court Opinion, 9/16/98, at 2. In such circumstances, this Court may exercise its discretion on whether or not to remand the case to the trial court for reconsideration. *See Triffin, supra; MNC Corporation v. Mt. Lebanon Medical Center, Inc.*, 294 Pa.Super. 405, 440 A.2d 528, 529 (1982)(both remanding for reconsideration); *Cohen, supra* (concluding remand would be inappropriate because of further delay and confusion). In the instant case where resolution of the issue rests solely on the facts presented in Appellant's amended complaint, and the trial court has provided us a 1925(a) opinion, we will review the issue. Not to do so would only delay further the resolution of an important claim which already has been caught for more than three years in a maze of administrative procedures.

5. Rule 1028 states in pertinent part:

failed to plead with enough specificity that similarly situated white employees were treated more favorably. He asserts that Appellant must not only plead that white employees requested and received vacation without being terminated, but also that they were permitted to take vacation during the exact time period that Appellant requested vacation, and were not fired.

¶ 11 In an appeal from an order sustaining a preliminary objection in the nature of a demurrer, our standard of review is well-settled.

[Our] scope of review is plenary[;] preliminary objections which result in the dismissal of the suit or the denial of the claim should be sustained only in cases which are clear and free from doubt. Further, the facts that are well-pleaded, material, and relevant will be considered as true, together with such reasonable inferences as may be drawn from such facts.

[Moreover,] preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer. In order to sustain a demurrer, it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit recovery. If there is any doubt, it should be resolved by the overruling of the demurrer.

*Hull v. Rose, Schmidt, Hasley & DiSalle,* 700 A.2d 996, 998–99 (Pa.Super.1997) (citing *Drain v. Covenant Life Ins. Co.,* 454 Pa.Super. 143, 685 A.2d 119, 121 (1996)). Put simply, the question presented by demurrer is whether, on the facts averred,

the law says with certainty that no recovery is possible. *Ham v. Sulek,* 422 Pa.Super. 615, 620 A.2d 5 (1993).

¶ 12 Unlawful discriminatory practices are clearly defined under the PHRA and Title VII.[6] Under Section 5(a) of Pennsylvania's Human Relations law, it is unlawful:

for any employer because of the race . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.

43 P.S. § 955(a). Under the federal statute, it is similarly unlawful for an employer to discriminate against any individual with respect to hiring or the terms or conditions of employment "because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a); *Butler v. Elwyn,* 765 F.Supp. 243, 246 (E.D.Pa.1991) (citing *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 645, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)). To state a cause of action for discriminatory discharge under either statute, a plaintiff's initial burden is to set forth a *prima facie* case of discrimination under the analytic framework which has evolved from the U.S. Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and was adopted by the Pennsylvania Supreme

(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:
* * * * *
(4) legal insufficiency of a pleading (demurrer); . . .
Pa.R.C.P. 1028(a)(4).

**6.** The PHRA is generally applied in accordance with Title VII. *Dici v. Commonwealth*

*of Pennsylvania,* 91 F.3d 542 (3d. Cir.1996). Thus, Pennsylvania courts may look to Title VII precedents when interpreting the Pennsylvania statute. *Kryeski v. Schott Glass Technologies,* 426 Pa.Super. 105, 626 A.2d 595, 598 (1993), *appeal denied,* 536 Pa. 643, 639 A.2d 29 (1994).

Court in *General Electric Corp. v. Pennsylvania Human Relations Com.*, 469 Pa. 292, 365 A.2d 649 (1976).

 ¶ 13 That theory, commonly referred to as the "pretext theory", is used to analyze individual claims of disparate treatment based on an illegitimate motive. It requires a plaintiff first to

> ... prov[e] by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a ***pretext*** for discrimination.

*Caterpillar Tractor Co. v. Pennsylvania Human Relations Com.*, 78 Pa.Cmwlth. 86, 466 A.2d 1129, 1132 (1983)(quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))(emphasis added). This burden is not onerous and is merely intended to eliminate the most common non-discriminatory reasons for an employer's actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Allegheny Housing Rehabilitation Corporation v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 129, 532 A.2d 315, 319 (1987).

 ¶ 14 The *prima facie* standard provides a valuable tool for plaintiffs in employment discrimination cases because direct evidence of discrimination is usually unavailable and the employer has the best access to discover the underlying reasons for the employee's dismissal. *Timmons v. Lutheran Children & Family Service of Eastern Pennsylvania, et al*, 1993 U.S.

Dist. Lexis 18011, 1993 WL 533399 (E.D.Pa.1993) (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979)). This is particularly so because the ultimate burden of proving intentional discrimination returns to the plaintiff after the defendant offers a non-discriminatory rationale for the adverse employment action. *Caterpillar Tractor Co., supra* at 1132. Furthermore, the *prima facie* model is not to be applied inflexibly, *see McDonnell Douglas, supra* at 802 n. 13; *Timmons, supra* at 6, but should be adapted to accommodate the nature of the discrimination alleged. *Allegheny Housing, supra* at 318.

 ¶ 15 In *McDonnell Douglas*, the *prima facie* model was set forth in the context of a discriminatory hiring allegation. The complainant had to show "that he is a member of a protected minority, that he applied for a job for which he was qualified, that his application was rejected and that the employer continued to seek other applicants of equal qualification." *General Electric Corp., supra* at 655–56 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). However, as the Commonwealth Court[7] has stated with reference to claims of discriminatory discharge:

> ... strict application of McDonnell–Douglas [sic] would likely prevent a complainant from satisfying his burden of proof as regards a prima facie case because the situation would, in many instances, not involve the employer's seeking of other "applicants" for the position. To obviate this problem, the courts have instead focused on whether the employer retained employees in similar circumstances as those of the complainant other than being a member of the complainant's class.

*Pittsburgh Commission on Human Relations v. U.S. Steel Corp.*, 127 Pa.Cmwlth. 646, 562 A.2d 940, 943 (1989) *appeal de-*

---

7. The Pennsylvania Commonwealth Court is the first line appellate court for all appeals from administrative bodies of state government, including the Pennsylvania Human Relations Commission. 42 Pa.C.S. § 763(a). As such, it has extensive experience reviewing claims of racial discrimination on appeal from administrative rulings of the PHRC.

*nied,* 524 Pa. 631, 574 A.2d 72 (1990) (quoting *Reed v. Miller Printing Equipment Division of Western Gear Corp.,* 75 Pa. Cmwlth. 360, 462 A.2d 292 (1983)). Thus, a *prima facie* case of discriminatory discharge only requires a plaintiff to show that 1) he is a member of a racial minority; 2) he is qualified for the job from which he was discharged; and 3) others not in the protected class were treated more favorably. *Butler v. Elwyn Institute,* 765 F.Supp. 243 (E.D.Pa.1991); *Burns International Security Services Incorporated v. Pennsylvania Humans Relation Commission,* 119 Pa.Cmwlth. 418, 547 A.2d 818, 820 (1988) (stating *prima facie* case under PHRA is established by showing that complainant is member of protected class, has suffered adverse employment action, and others not in the class have been treated differently). *Compare Thomas v. Pennsylvania Human Relations Commission,* 106 Pa.Cmwlth. 598, 527 A.2d 602, 605 (1987) (defining *prima facie* case as whether complainant "was a member of a protected minority, with a desire to remain at his employment, and was discharged").

¶ 16 These formulations require no specificity in the facts to be averred to show the third prong of the *prima facie* case, and have not been applied to require more. *Butler v. Elwyn,* 765 F.Supp. 243 (E.D.Pa.1991), provides a useful illustration. The plaintiff in *Butler,* a black female who was fired from her job after requesting a leave of absence to serve a jail term, brought discrimination claims under Title VII and the PHRA. She was found to have met her *prima facie* burden, *see infra* at 1212, on the third prong under both statutes when she "asserted that white employees were granted leaves of absence for personal reasons while she was denied a leave of absence for personal reasons." *Id.* at 250. Plaintiff was not required to aver that others had been granted leaves when they requested time to serve a prison sentence.

¶ 17 Appellant, in his amended complaint, has clearly stated the facts necessary to establish a *prima facie* case of discriminatory discharge. Appellant is African–American; he was qualified for his job when hired and served satisfactorily in his position for two years; he requested vacation days and was discharged; other employees at Merit Press requested and received vacation days without being discharged. These statements are found on the face of the complaint and do not require us to draw inferences as we may when reviewing the grant of preliminary objections. *Hull, supra; see also Timmons v. Lutheran Children & Family Service of Eastern Pennsylvania, et al,* 1993 U.S. Dist. Lexis 18011, 1993 WL 533399 (E.D.Pa.1993) (stating that *prima facie* standard for Title VII may be met through allegations that *imply* employer's discriminatory intent and are *inferred* from other allegations in the complaint.) Furthermore, the facts pled eliminate the most obvious reason for a sudden termination: job performance. Read in the context of Appellant's remaining allegations, his complaint clearly raises a presumption that an impermissible discriminatory reason may have motivated Appellees' sudden decision to fire Appellant. Recovery is possible on these facts; thus, we concur with the trial court which said:

> [u]pon a reading of the four corners of the Complaint, we now conclude that Pennsylvania Rule of Civil Procedure 1028 has been complied with by the Plaintiff. After the close of pleadings and all discovery has taken place, if the facts support Defendant's contention, then other relief might be sought; however, such a conclusion cannot be drawn at this juncture.

Trial Court Opinion, 9/16/98, at 2. We therefore reverse the trial court's order of June 30, 1998, dismissing Appellant's complaint and reinstate his claim for racial discrimination.[8]

---

8. Because we find that Appellant has set forth a cause of action for discriminatory discharge under the relevant sections of the PHRA and Title VII, we do not address whether or not he may also make out a cause of action for other types of racial discrimination under these sections.

¶ 18 Appellant also makes a retaliatory discrimination claim.[9] He contends this claim is properly before the courts because it is reasonably related to the allegation of race-based discrimination stated in his PHRA complaint. Furthermore, he asserts that when he, without legal help, filed his administrative complaint, he provided the agency sufficient facts to trigger an investigation of his employer's retaliatory conduct. Appellees counter by asserting that Appellant failed to exhaust his administrative remedies with regard to his retaliation claim, and the trial court, therefore, had no jurisdiction over the claim.[10] To support this contention they make two specific arguments: 1) Appellant's PHRC complaint states only that his employer discriminated by discharging him on the basis of race and 2) the "race box" but not the "retaliation box" was marked on Appellant's subsequently filed EEOC charge form.

 ¶ 19 Under the PHRA and Title VII, it is well-settled that a plaintiff must exhaust all administrative remedies prior to seeking redress in court. *Clay v. Advanced Computer Applications*, 522 Pa. 86, 90–91, 559 A.2d 917, 919 (1989); *Parsons v. City of Philadelphia Coordinating Office of Drug & Alcohol Abuse Programs*, 833 F.Supp. 1108 (E.D.Pa.1993). Underlying this procedure, which postpones a complainant's right to seek action in the courts, is the legislative intent to use the greater expertise of administrative agencies in the area of unlawful discrimination,[11] to promote voluntary compliance without litigation and to give notice to the charged party. *Lukus v. Westinghouse Electric Corp.*, 276 Pa.Super. 232, 419 A.2d 431, 455 (Pa.Super.1980); *Reddinger v.*

---

9. Appellant's claim is made under both the PHRA and Title VII. Section 955(d) of the PHRA makes it unlawful "for any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge ... under this act." 43 P.S. § 955(d). The comparable section of Title VII forbids an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation ... under this subchapter." 42 U.S.C. § 2000e–3(a). To establish that a discharge was retaliatory, under either statute, a plaintiff must show that (1) he engaged in a protected activity; (2) he was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge. *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 186, 126 L.Ed.2d 145 (1993). "Protected activity" includes informal protests of discrimination such as complaints to management. *Harris v. SmithKline Beecham*, 27 F.Supp.2d 569 (E.D.Pa.1998) (citing *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir.1995)).

10. We again note that when reviewing preliminary objections, facts that are well-pleaded, material and relevant will be taken as

true, together with reasonable inferences which may be drawn from such facts. *Mellon v. Fabinyi*, 437 Pa.Super. 559, 650 A.2d 895, 899 (1994); *King v. Brown*, 911 F.Supp. 161, 164 (E.D.Pa.1995). In this instance, Appellees base their motion to dismiss on Pa.R.C.P. 1028(a)(1) – "lack of jurisdiction over the subject matter of the action ...". "When a party uses a preliminary objection in the nature of a petition raising a question of subject matter jurisdiction, the court's function is to determine whether the law will bar recovery due to the lack of such jurisdiction." *Kazos v. Diakakis*, 443 Pa.Super. 89, 660 A.2d 1359 (1995) (quoting *Philadelphia Housing Authority v. Barbour*, 405 Pa.Super. 140, 592 A.2d 47 (1991), *aff'd* 532 Pa. 212, 615 A.2d 339 (1992)).

11. The Pennsylvania Supreme Court emphasized that:

> [T]he Legislature recognized that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility to remedy and hopefully eradicate the 'evils' of discrimination....

*Clay v. Advanced Computer Applications*, 522 Pa. 86, 91, 559 A.2d 917, 919 (1989) (quoting *Pennsylvania Human Relations Commission v. Alto–Reste Park Cemetery Ass'n.*, 453 Pa. 124, 133–34, 306 A.2d 881, 887 (1973)).

*Hospital Central Services, Inc.,* 4 F.Supp.2d 405, 409 (E.D.Pa.1998). However, once a charge has been filed, the scope of a judicial complaint is not limited to the four corners of the administrative charge. *Doe v. Kohn Nast & Graf,* 866 F.Supp. 190, 195 (E.D.Pa.1994). *See also Reddinger, supra* at 409 (stating administrative charge is not blueprint for litigation to follow). The parameters of a subsequent private action in the courts is "defined by the scope of the [agency] investigation which can reasonably be expected to grow out of the charge of discrimination...." *Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 965 (3d Cir.1978) (quoting *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977)); *See also Antol v. Perry,* 82 F.3d 1291, 1295 (3d Cir.1996). The flexibility of this standard was made explicit by the *Hicks* court which unequivocally stated that "if the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from his statutory right to a civil action." *Hicks, supra* at 965 (3d Cir. 1978).[12]

¶ 20 Under this standard, when determining the appropriate scope of an agency investigation, the legal analysis turns on whether there is a close nexus between the facts supporting each claim, *Hicks, supra* at 966, or, as the *Ostapowicz* court wrote, whether additional charges made in the judicial complaint "may fairly be considered explanations of the original charge and growing out of it." *Ostapowicz, supra* at 399.[13] Similarly, where the *specifics* of an administrative charge do not encompass a subsequent claim, the court has found that the scope of the investigation would properly have been limited to the facts alleged before the agency and the district court is without jurisdiction to consider the subsequent claim. *Antol v. Perry, supra* at 1296.

¶ 21 Thus, contrary to Appellee's assertion based on *Antol v. Perry, supra,* courts have not uniformly rejected attempts by plaintiffs to expand litigation to include types of discrimination not alleged in the administrative complaint. Appellees' Brief at 11. *Antol* does not support that proposition; rather it provides an example of claims where there is no link between the facts supporting the original charge and the claim asserted after agency investigation. Specifically, in *Antol,* plaintiff sued the Department of Defense alleging, *inter alia,* gender discrimination under Title VII, despite the fact that his complaint at the agency level and subsequently to the federal office of the EEOC only alleged disability discrimination. The Third Circuit affirmed the district court's grant of summary judgment to defendant on the gender discrimination claim, based on the affidavit of the EEO Manager investigating Antol's disability complaint, who stated that Antol did not raise gender discrimination during informal counseling or the formal administrative process, and Antol's own admission that during the ad-

---

**12.** The Third Circuit also made clear in *Hicks* that not only must the court find that any new claims are within the scope of a reasonable investigation but also that any new claims which might be uncovered are within the scope of the charge filed. "Otherwise, the charging party could greatly expand an investigation simply by alleging new and different facts when he was contacted by the Commission following his charge." *Hicks, supra* at 966.

**13.** This was underscored in *Doe v. Kohn Nast & Graf,* 866 F.Supp. 190 (E.D.Pa.1994), where plaintiff added to his amended complaint two claims which were not raised in his agency charge. The court denied defendant's motion for summary judgment, as to these claims, stating:

> The most important consideration in determining whether the plaintiff's judicial complaint is reasonably related to his EEOC charge is the factual statement.... The facts that support plaintiff's claims of improper medical inquiry and intimidation and coercion appear in the administrative charge.... Therefore, one would reasonably expect the claims to have grown out of a proper EEOC investigation. Plaintiff has not failed to exhaust his administrative remedies.

*Id.* at 196.

ministrative process he did not suspect gender discrimination. The court found in those circumstances that the facts supporting a disability discrimination charge *would not have led* to awareness or examination of a gender discrimination claim. Thus, in this instance, summary judgment was properly granted: the failure to exhaust administrative remedies defeated the purpose of the administrative procedure because without notice of the gender claim there was no opportunity to settle the dispute through conciliation and avoid unnecessary court action. *Antol v. Perry, supra* at 1294–95.

¶ 22 We turn then to a determination of whether the facts Appellant alleges he told the agency, which at this preliminary stage we take as true, *Mellon v. Fabinyi,* 437 Pa.Super. 559, 650 A.2d 895, 899 (1994), would have been part of his charge and reasonably led the PHRC to investigate whether Appellant's discharge was based on retaliation as well as on race.

¶ 23 Appellant's amended complaint indicates that he was fired on October 28, 1994. Almost immediately thereafter he filed a charge with the PHRC stating that Merit Press had unlawfully discriminated against him by discharging him *because of his race.* The allegations in his complaint also indicate that when Appellant filed the PHRC claim, he was acting without counsel. Appellant, therefore, explained to the agency's intake investigator what had happened to him and the actual charge was prepared by the PHRC. Appellant told the intake investigator not only that his employer treated him differently than his white counterparts but also that he was constantly subjected to derogatory racial comments by co-workers. He also told the administrator that the company owner did nothing to change the conduct of white employees after Appellant complained about this abuse, but did warn Appellant that he was complaining too much. Appellant alleges that he provided documentation of this warning to the PHRC. Finally, Appellant explained that when he asked for vacation because he feared that he could not cope with the racial hostility of his white co-workers while Mr. Storlazzi was on vacation, he was abruptly fired. The complaint also alleges that, although the PHRC did not uphold Appellant's charge of discrimination, as part of its investigation the Commission found that "evidence did substantiate that racial slurs and jokes had been used in the workplace. . . ." Amended Complaint, ¶ 29.

¶ 24 We find that this information from an African–American employee, who has just been fired, should have been sufficient to trigger the possibility of retaliatory discharge in the mind of even an inexperienced PHRC administrator. The gravamen of Appellant's complaint was the racially abusive environment created by certain employees at Merit Press. Appellant tried to alleviate that situation by complaining to his employer, the owner of the business. When his complaints resulted in discipline to him rather than to the employees, who were relatives of the owner, Appellant sought to avoid the hostility by asking for vacation when the owner was going to be away. This request resulted in his sudden discharge. These facts complaints about a discriminatory practice leading to a discharge beg investigation of retaliatory discharge. *See supra* 1214. When added to the assertion, uncontroverted by Appellees, that the Commission's investigation uncovered evidence of racial slurs and jokes at Merit Press, we find that the facts alleged by Appellant should have reasonably led the PHRC to investigate whether Appellant's discharge was based on retaliation as well as on race.

¶ 25 Since *Hicks,* evidence that a complainant would have told the administrative investigator about the allegations in question raises an inference that a reasonable agency investigation would have uncovered the claim or claims. *Hicks, supra* at 966. While we agree with Appellees' assertion that under *Lesko v. Clark,* 904 F.Supp. 415, 418 (M.D.Pa.1995), it must also be shown that the complainant raised the issue at the agency fact-finding confer-

ence, at this stage in the proceedings, we are limited to reviewing the four corners of the complaint. Contrary to *Hicks* and *Lesko*, which were both decided on motions for summary judgment, we have no way to ascertain whether such a conference did or did not take place, and what information, if any, complainant and his counsel might have relayed. Nor do we have an affidavit from any official of the PHRC as did the court in *Antol.*

¶ 26 Moreover, we do not find it surprising that Appellant signed the administrative charge prepared by the PHRC, which stated he was fired because of his race. The concepts of "protected activity" and "retaliatory discharge", which constitute this additional form of discrimination, are legal terms of art, not necessarily within the ken of laypeople. This is particularly true in a small business such as Merit Press where there are no formal complaint procedures and the "protected activity" is the employee's direct but informal complaint to the employer. If the intake administrator failed to explain these concepts to Appellant, who alleges he was without counsel, he would not have known to check the "retaliation" box. As Appellant validly argues, courts have consistently held that an unrepresented charging party should not be penalized for the technical shortcomings of a charge. *Martinez v. Quality Value Convenience, Inc.*, No. 96–7715, 1998 U.S. Dist. Lexis 15685, at 2, 1998 WL 967377 (M.D.Pa. Sept. 30, 1998). *See also Love v. Pullman*, 404 U.S. 522, 526, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (warning that procedural technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process).

¶ 27 We concur; if the facts alleged by a plaintiff claiming discrimination should reasonably have led the agency to investigate a claim, he must not lose his day in court because he stubs his toe on a procedural doorstep. Denying preliminary objections in a PHRC case contesting the trial court's jurisdiction, the late venerable Judge Hoffman noted:

We do not believe that the procedures of Title VII [requiring a plaintiff to exhaust administrative remedies] were intended to serve as a stumbling block to the accomplishment of the statutory objective. To expect a complainant at the administrative stage, usually without aid of counsel, to foresee and handle intricate procedural problems which could arise in subsequent litigation, all at the risk of being cast out of court for procedural error, would place a burden on the complainant which Congress neither anticipated nor intended.

*Campanaro v. Pennsylvania Elec. Co.*, 440 Pa.Super. 519, 656 A.2d 491, 493–94 (1995) *appeal denied*, 542 Pa. 639, 666 A.2d 1049 (1995) (quoting *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 183 (D.C.Cir.1974)). Thus, we find that as a matter of law, the trial court improperly granted Appellees' preliminary objections and dismissed Appellant's retaliatory discharge claim for failure to exhaust administrative remedies.

CONCLUSION:

¶ 28 Appellant's amended complaint is legally sufficient to establish a *prima facie* case of discriminatory discharge. Furthermore, we find that the facts Appellant alleges he provided to the PHRC when he filed his charge should reasonably have led the agency to investigate the charge of retaliatory discrimination he seeks to litigate. We therefore conclude that the trial court improperly dismissed Appellant's complaint for failure to state a claim and failure to exhaust administrative remedies.

¶ 29 Consequently, we reverse the order of the Court of Common Pleas of Philadelphia County granting Appellees' preliminary objections and dismissing Appellant's complaint, and remand for proceedings consistent with this opinion.